Raul Lara **MARTINEZ**, et al.,
Plaintiffs-Appellees,

v.

**FOOD CITY, INC.,** d/b/a **Foodland,**
Defendant-Appellant.

No. 80–2008
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 7, 1981.

---

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Joseph Eduardo Pena, Laredo, Tex., for plaintiffs-appellees.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Raul Lara Martinez, Jose Luis de Leon and Eliseo Farias Martinez, all former employees of Appellant Food City, Inc., brought this action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (1976) ("FLSA"), to recover unpaid overtime wages. After trial, the jury found the Appellant liable for uncompensated overtime hours and awarded damages to each of the three plaintiffs. The trial court then awarded an additional, equal amount as liquidated damages, and attorney's fees, pursuant to 29 U.S.C. § 216 (1976). Appellant raises three issues on this appeal: (1) whether the trial court erred in denying Appellant's motion for a new trial, based on allegations of jury misconduct; (2) whether the trial court correctly ruled that the three-year statute of limitations would be applicable, rather than two years, 29 U.S.C. § 255(a) (1976); and (3) whether the trial court abused its discretion in awarding liquidated damages. We affirm.

## I. FACTUAL BACKGROUND

Appellant is a corporate employer operating several retail food stores in the Laredo, Texas, area. Each of the Appellees was employed by Appellant for various periods between August, 1973 and November, 1978. Raul Lara Martinez and Eliseo Farias Martinez were employed as "stockers," and Jose Luis de Leon was employed as an assistant manager. The duties of a stocker, as described at trial, consisted of unloading merchandise as it arrived at the store and restocking the supply of merchandise on the shelves. Appellant maintained a time-card system for its employees. The system contained a mechanical clock, and each employ-

William C. Church, San Antonio, Tex., for defendant-appellant.

ee would punch in on his individual card as he arrived and punch out when he left work. Appellees charged that they were required by management to punch their cards out but continue working, or leave the cards blank to be filled in by management, and accordingly the cards did not reflect all overtime hours worked. This suit was brought to recover the unpaid wages for these hours, in addition to the liquidated damages and attorney's fees prescribed by the Act.

At *voir dire*, the district judge asked several questions to identify any members of the panel who had been involved in claims for unpaid wages, specifically with reference to a time-card system. In response to this questioning, a panel member stated that she had had an employment experience in which she was required to punch out and continue work, and also that her husband had been involved in a wage dispute with his employer. This panel member was not included in the jury. Following this specific questioning, the district judge asked generally whether any panel member felt he could not be fair and impartial for any reason. No panel member responded, and neither attorney proposed additional questions.

At trial Appellees introduced their time cards for the relevant periods, the testimony of a former store manager, testimony of another former "stocker," and the testimony of Appellees themselves. These witnesses testified generally that the amount of work required by management could not be performed within a normal 40-hour week, therefore requiring substantial overtime work, but that employees were not permitted to fully record their overtime hours on their time cards. Appellant introduced testimony from various management officials denying any knowledge of uncompensated overtime. Several witnesses for Appellant stated that it would have been corporate policy to immediately terminate any employee who continued to work after punching out. Appellant also called an employee who denied ever being required to punch out and continue work.

After the close of the evidence, but before submission of the case to the jury, the trial court ruled that it would not submit to the jury the question whether the violations, if any, were "willful" for purposes of determining the applicable statute of limitations. 29 U.S.C. § 255 (1976). That section provides that a two-year statute of limitations applies to actions under the FLSA, but that a three-year period applies if the violations were "willful." Relying on a number of Fifth Circuit cases directly addressing this issue, the trial court ruled as a matter of law that any violations found would be willful, and the three-year period would apply.

The jury returned special interrogatories finding that Appellant was liable to each Appellee for uncompensated overtime. At the request of Appellant the jury was polled and each juror assented to the verdict. As the jury was discharged, the district judge commented that the jurors were now relieved of the prohibition against discussing the case with anyone, and were free to talk with the attorneys or anyone else if they desired. The judge commented, "Sometimes the attorneys or the parties or other people like to talk to a juror and find out what things impressed you or didn't impress you or that sort of thing."

A hearing was subsequently held on liquidated damages and attorney's fees. Although Appellant had initially told the court it had no further evidence on the issue of good faith, it submitted the affidavit of the president and principal stockholder of Appellant. The affidavit stated that the president had always required compliance with the FLSA, and that he had never had any indication that employees were working overtime without compensation. The trial court thereafter entered final judgment awarding, as liquidated damages, an additional amount equal to the jury's award to each Appellee. The court also awarded reasonable attorney's fees.

Appellant then hired an investigator, Humberto Tijerina, to conduct post-verdict interviews with members of the jury. Tijerina obtained the affidavit of juror Rosa

Maria Castillo. In her affidavit, juror Castillo states that during deliberations, juror Carrizales told the jury that the Appellant "should be taught a lesson" for hiring Mexican nationals holding green cards, and that juror Arias had described a personal experience working "off the clock" and observed that it was common practice in the Laredo area. Appellant submitted this affidavit, together with the affidavit of Tijerina and another investigator, in support of its motion for a new trial.

The district judge set a hearing on Appellant's motion and both sides submitted briefs. At the initial hearing, the court ruled that jurors Castillo and Carrizales were incompetent to provide testimony or affidavits relating to the statements allegedly made during deliberations, citing Federal Rule of Evidence 606(b), but that the court would hear testimony as to whether any juror had misrepresented or intentionally concealed information during the *voir dire* examination. Appellant asserted this theory only with respect to juror Arias, and the hearing was adjourned to locate Arias. At the second day of hearings, Arias took the stand and was examined by Appellant's counsel and the trial court. In response to repeated questioning, Arias admitted working for 14 years on a time-card system but denied ever being required to work overtime without compensation, and denied making the alleged statements during jury deliberations. Arias also denied making such statements to the Appellant's investigator, Tijerina. Tijerina then testified that he had a conversation with Arias during which Arias told him about employees working off the clock at the place of his former employment. According to Tijerina, however, Arias had never claimed to have made any statements regarding such experiences during jury deliberations. Tijerina was examined by Appellees' counsel and by the court. At the close of this testimony, the trial court denied Appellant's motion for a new trial.

## II. JURY MISCONDUCT [1]

■ The decision to grant or deny a motion for new trial is within the sound discretion of the trial judge, and will not be reversed absent an abuse of that discretion. *Ellis v. Chevron U.S.A., Inc.*, 650 F.2d 94, 97 (5th Cir. 1981). When the alleged ground for new trial is jury misconduct, the trial court's discretion extends not only to the decision whether or not to grant the motion, but also to the procedures appropriate for investigating the allegations. *United States v. Reyes*, 645 F.2d 285, 288 (5th Cir. 1981); *Vezina v. Theriot Marine Service, Inc.*, 610 F.2d 251, 252 (5th Cir. 1980); *United States v. Khoury*, 539 F.2d 441, 443 (5th Cir. 1976), *cert. denied* 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). We cannot say, on this record, that the trial court's actions with regard to the new trial motion were either clearly erroneous or an abuse of its discretion.

1. At the outset, Appellees argue that the jury misconduct issue was not properly preserved for review on appeal because Appellant failed to object to the trial court's rulings excluding juror testimony and denying the motion for new trial. Under Federal Rule of Civil Procedure 46, a formal exception to the court's rulings was unnecessary. Rule 46 requires only that "a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor." We believe Rule 46 was adequately complied with under the circumstances of this case.

The purposes of Rule 46 are served when a party's position has been made clear to the court, along with the action the party wishes the court to take, and the court is aware that the party does not agree with the court's ruling. *Stone v. Morris*, 546 F.2d 730, 736 (7th Cir. 1976); 5A Moore's Federal Practice ¶ 46.02 at 1907 (1980).

The trial court here was fully aware, from Appellant's motion with attached affidavits and from Appellee's opposition brief, of the nature of the proposed evidence, Appellant's purpose in seeking to introduce the evidence, and the action both parties desired it to take. During the hearings on Appellant's new trial motion, the court and Appellant's counsel discussed at some length the competency of the jurors to testify. At one point, the court stated, "If you like, for the record, let me tell you about the rules of evidence." The court entered on the record a thorough discussion of the reasoning behind his rulings. Under these circumstances, a formal objection would have been superfluous and requiring one would be unduly ritualistic.

■ As to alleged statements by juror Carrizales to the effect that Appellant should be "taught a lesson," the trial court correctly ruled that juror testimony or affidavits would be incompetent under Federal Rule of Evidence 606(b). This rule is a codification of long-standing practice in the federal courts,[2] and provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Fed.R.Evid. 606(b). The evidence offered by Appellant regarding Carrizales' alleged statements is juror testimony "as to [a] matter or statement occurring during the course of the jury's deliberations," and affidavits and evidence of such statements. This evidence is clearly barred by Rule 606(b) unless it falls within the exception for "extraneous prejudicial information." Appellant argues that these statements are "presumptively harmful" and show that the verdict was the result of bias and prejudice. Whatever weight these assertions may have as grounds for a new trial, however, they are inadequate to meet Appellant's initial burden of producing competent evidence. *See Government of Virgin Islands v. Gereau*, 523 F.2d 140, 148 (3rd Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); *Cherensky v. George Washington—East Motor Lodge*, 317 F.Supp. 1401, 1403 (E.D.Pa.1970).

Rule 606(b) embodies the distinction developed by the federal courts precluding inquiry into the subjective deliberation process of the jury, *see United States v. D'Angelo*, 598 F.2d 1002 (5th Cir. 1979), while allowing juror testimony as to objective events or incidents that constitute external or extraneous influences on the jury. *See* 3 Weinstein, Evidence ¶ 606[04] at 606–28 (1978). In its careful and reasoned discussion in *Gereau*, the Third Circuit identified several examples of extraneous influences: publicity and extra-record evidence reaching the jury room; or communication or contacts between jurors and litigants, the court, or other third parties. 523 F.2d at 149. On the other hand, juror testimony regarding the possible subjective prejudices or improper motives of individual jurors has been held to be within the rule, rather than within the exception for "extraneous influences." *United States v. Duzac*, 622 F.2d 911, 913 (5th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980); *Smith v. Brewer*, 577 F.2d 466 (8th Cir.), *aff'g*, 444 F.Supp. 482 (S.D.Iowa), *cert. denied*, 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978); *Poches v. J. J. Newberry Co.*, 549 F.2d 1166, 1169 (8th Cir. 1977); *Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245, 1247 (3rd Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971); *Young v. United States*, 163 F.2d 187, 189 (10th Cir.), *cert. denied*, 332 U.S. 770, 68

---

2. *See McDonald v. Pless*, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915); *Government of Virgin Island v. Gereau*, 523 F.2d 140, 148–50 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); 3 Weinstein, Evidence ¶ 606[3] at 606–24–26 (1978).

Appellee argues strenuously that Appellant should not have conducted its post-verdict interrogation without the knowledge and consent of the trial court. Although there is no direct prohibition of this practice applicable here, we are constrained to note that such "fishing expeditions," not grounded on any preexisting reasonable belief of wrongdoing, are looked upon with severe disfavor in this Circuit as violating, *inter alia*, the substantial policy interests in protecting the confidentiality of the jury function. *See O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309–10, 1310 n.4 (5th Cir. 1977). Because of our resolution of this appeal, however, it is unnecessary to pursue the propriety of Appellant's investigation.

S.Ct. 1533, 92 L.Ed. 1779 (1947); *Cherensky v. George Washington—East Motor Lodge,* 317 F.Supp. 1401, 1403 (E.D.Pa.1970). *But Cf. Tobias v. Smith,* 468 F.Supp. 1287 (W.D. N.Y.1979). Our analysis of the "extraneous prejudicial information" exception in *Duzac* is directly applicable here:

> Here, there is no evidence that any external influence was brought to bear on members of the jury. The prejudice complained of is alleged to be the product of personal experiences unrelated to this litigation. The proper time to discover such prejudices is when the jury is being selected and preemptory challenges are available to the attorney.

622 F.2d at 913. The specter of juror prejudice raised by Appellant is a particularly ominous and disturbing one, even if its exact operation in this case is left rather ambiguous. We conclude, however, that Appellant has produced no competent evidence to support its claim.

█ The allegations that juror Arias concealed prejudicial information on *voir dire,* and then made statements concerning this prejudicial material during jury deliberations, are both precluded by the district court's finding that juror Arias had never had the experience in working off the clock attributed to him by Appellant. We do not comment on whether the court's thorough questioning may have even exceeded permissible inquiry into the jury deliberations; it is sufficient that the court was satisfied, after hearing both juror Arias and Appellant's investigator Tijerina, that no misconduct took place. Significantly, the court noted that the testimony suggested the investigator played a dominant role in the conversations with jurors and may have instigated, in large part, the allegations of wrongdoing.

Appellant argues that, in order to have an adequate hearing, the affidavit and testimony of juror Castillo and other jurors should be considered. As we have already noted, however, the discretion of the trial court in handling motions for new trial alleging jury misconduct extends to the type of investigation required. *United States v. Reyes,* 645 F.2d 285, 288 (5th Cir. 1981); *United States v. Martinez,* 604 F.2d 361, 364 (5th Cir. 1979), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980); *United States v. Khoury,* 539 F.2d 441, 443 (5th Cir. 1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). A trial court may tailor the investigation so as to minimize the harm likely to result from invading the sanctity of the jury room, while recognizing the need for an adequate hearing of the misconduct allegation. *United States v. Martinez, supra.*

On this record we conclude that neither the procedures followed by the district court in this case nor his conclusion that no misconduct had taken place was clearly erroneous or an abuse of discretion. Nothing in *Vezina v. Theriot Marine Service, Inc.,* 610 F.2d 251 (5th Cir. 1980), is to the contrary. The first time *Vezina* reached the Fifth Circuit, the court recognized that "in this Circuit there is no hard and fast rule requiring a new trial for failure of a juror at *voir dire* examination to disclose in a personal injury case the fact that he was a party in a similar case .... The determination of whether a new trial should be granted because of jury misconduct is left to the sound discretion of the trial court and must be decided on an *ad hoc* basis." 554 F.2d 654 at 656. Because the trial court in *Vezina* had denied any hearing at all into the jury misconduct, there was no indication in the record whether any prejudicial statements had, in fact, been made during deliberations. Accordingly, the case was remanded for an evidentiary hearing. No additional instructions were given to the trial court. On remand, the juror in question admitted making the statements alleged. The trial court then examined each of the available jurors and concluded that the verdict was fair and free from prejudice. On appeal from this finding, this court upheld the trial court's actions under the abuse of discretion standard. 610 F.2d at 252. In *Vezina,* the trial court's examination of each juror was necessary to determine whether any prejudice had resulted from improper statements by a juror. *See United States v. Riley,* 544 F.2d 237 (5th

Cir. 1977). This case never reached that stage; once the district court concluded that no concealment had taken place during the *voir dire*, further inquiry became academic.

## III. STATUTE OF LIMITATIONS

■ Appellant's remaining contentions may be disposed of quickly. Appellant argues that the trial court erred in ruling, as a matter of law, that any violations of the FLSA found by the jury would be "willful" thereby triggering the three-year statute of limitations under 29 U.S.C. § 255(a) (1976):

> any cause of action for ... unpaid overtime compensation ... may be commenced within two years after the cause of action occurred ... except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action occurred ....

*Id.* The trial court correctly applied this court's precedent construing "willful" in this context. *See Marshall v. A & M Consolidated Independent School District*, 605 F.2d 186, 190 (5th Cir. 1979); *Brennan v. Heard*, 491 F.2d 1, 3 (5th Cir. 1974); *Coleman v. Jiffy-June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1971), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). In *Brennan v. Heard*, we said "an employer acts willfully and subjects himself to the three year liability provision if he knows, or has reason to know, that his conduct is *governed by* the Fair Labor Standards Act." 491 F.2d at 3. The court in *Jiffy-June Farms* proposed the following often-quoted formulation: "Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture?" 458 F.2d at 1142. Appellant's witnesses consistently testified that they were aware their conduct and that of Appellant was governed by the FLSA. The trial court was thus fully justified in ruling that the three-year statute of limitations would apply.

Appellant nevertheless argues that the D.C. Circuit's opinion in *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 459–62 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978), supports a different theory. In *Laffey*, the D.C. Circuit exhaustively reviewed the history and case law relating to § 255(a), and concluded:

> [A]t the very least the employer's noncompliance is "willful" when he is cognizant of an appreciable possibility that he may be subject to the statutory requirements and fails to take steps reasonably calculated to resolve the doubt.

567 F.2d at 462. Evidently relying on the last phrase in this quotation, Appellant argues that "Under the *Laffey* standard of willfulness, defendant had taken good faith steps reasonably calculated to prevent any violations of the Act." Whatever real difference there may or may not be between the standard of the D.C. Circuit and our own in this matter, this is not it. Appellant's theory that assertion of a preventive policy mitigates application of the three-year statute of limitations is contrary to a plain reading of *Laffey*; also, Appellant cites no case, and research discloses none, in which the analysis of *Laffey* is used to avoid the three year period when an employer asserts such a defense. Preventive measures might arguably affect liquidated damages, but not the "willful" standard of § 255(a). *See Usery v. Godwin Hardware, Inc.*, 426 F.Supp. 1243, 1267 (W.D.Mich. 1976).

Appellant also argues that the knowledge and actions of lower level management should not have been imputed to the corporate defendant. This case is controlled, however, by *Brennan v. General Motors Acceptance Corporation*, 482 F.2d 825 (5th Cir. 1973). As in this case, the employer in *Brennan* argued that it had no knowledge of unreported overtime, relied on employees to report their hours fully, and promulgated memoranda to encourage full reporting. Observing that the immediate supervisors may have had actual knowledge of uncompensated overtime, and that a reasonably diligent employer could have acquired knowledge of the violations of the Act, the *Brennan* court held the employer had con-

structive knowledge of the violations. The facts in *Brennan* are strikingly similar to those in this case, and the same conclusion is applicable here. *See also Goldberg v. Kickapoo Prairie Broadcasting*, 288 F.2d 778 (8th Cir. 1961).

## IV.  LIQUIDATED DAMAGES

■  Finally, Appellant argues that the trial court abused its discretion by awarding full liquidated damages. Section 216 of Title 29 provides that an employer who violates the FLSA is liable for the unpaid overtime compensation "and in an additional equal amount as liquidated damages." 29 U.S.C. § 216 (1976). Section 260, however, provides:

> If the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260 (1976). Appellant argues that this discretion was invoked, and that it was error to award full liquidated damages, in view of the "overwhelming and undisputed evidence of good faith" on the part of Appellant in this case. We reject this argument.

The trial court reasoned that § 260 comes into play only after a violation is found, entitling an employer to then come forward with evidence that the violations were nevertheless committed in good faith and with reasonable grounds for believing the acts did not violate the law. This position is supported by this court's decision in *Barcellona v. Tiffany English Pub*, 597 F.2d 464 (5th Cir. 1979):

> [This section] imposes upon the employer who would escape the payment of liquidated damages a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon

such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.

*Id.* at 468. Following discharge of the jury, the court asked appellant's counsel whether any evidence would be submitted as to employer's good faith under § 260. Counsel responded that he knew of nothing else besides the testimony of the witnesses in Appellant's case in chief. Appellant did, however, submit an affidavit of its president and principal shareholder. As the trial court observed, this affidavit essentially repeated and elaborated Appellant's denial of any violation and its belief that the time records were accurate.

There was, as a result, no evidence before the trial court of the kind envisioned by § 260; for example, that the employer outrightly and candidly engaged in the acts proven to be violations but did so under a mistaken, although reasonable, belief that its acts were in conformity with the law. *See Reed v. Murphy*, 232 F.2d 668, 678 (5th Cir.), *cert. denied*, 352 U.S. 831, 77 S.Ct. 45, 1 L.Ed.2d 51 (1956). In these circumstances the trial court was within its discretion to award full liquidated damages. We note that even if an employer does introduce evidence supporting a "good faith and reasonable belief" defense, the trial court may still, in its discretion, award liquidated damages. *McClanahan v. Mathews*, 440 F.2d 320 (6th Cir. 1971). As for Appellant's argument that it was precluded from correcting the problem because no employee complained, "[t]hat an employer [has] broken the law for a long time without complaints from employees is plainly not the reasonable ground to which the statute speaks." *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 465 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

AFFIRMED.