**Georgia Ann Wright HILL, Plaintiff-Appellee Cross-Appellant,**

v.

**J. C. PENNEY COMPANY, INC., Defendant-Appellant Cross-Appellee.**

**No. 81–2509.**

United States Court of Appeals,
Fifth Circuit.

Oct. 7, 1982.

---

Fulbright & Jaworski, A. J. Harper, II, Nancy Morrison O'Connor, Houston, Tex., for defendant-appellant cross-appellee.

Anthony P. Griffin, Galveston, Tex., Elwyn C. Lee, Houston, Tex., for plaintiff-appellee cross-appellant.

Before CLARK, Chief Judge, GEE and GARZA, Circuit Judges.

GARZA, Circuit Judge:

This is an Equal Pay Act,[1] 29 U.S.C. § 206(d), and Title VII, 42 U.S.C. § 2000e et seq., sex discrimination case brought by a woman who worked for a number of years as a seamstress in the Alteration Department of the Almeda Mall J. C. Penney store in Houston, Texas. During the time that she held this job, she worked with another individual, Leroy Carter. He had been hired seven months before her and was allegedly her supervisor. Plaintiff brought this case with the charge that the company violated the Equal Pay Act when it paid her a much lower salary for performing substantially the same work that Mr. Carter performed. She also charged the company with violating Title VII by paying her an unequal wage, which it was unable to justify on any basis other than sex. Both claims were accepted by the court below. However, the court dismissed her claim that Title VII was violated when the company refused to hire her in a commissioned sales position, as well as her claim that the company retaliated against her by delaying certain transfer papers when she left the store's employ and moved to Ft. Worth. In its order of judgment, the district court awarded plaintiff two years of back-pay. The court also awarded attorneys' fees to plaintiff but ordered each party to bear its own costs. By means of this appeal, defendant J. C. Penney Company charges that the district court committed error in finding for plaintiff on the Equal Pay Act and Title VII claims. In addition, defendant seeks an award of attorneys' fees for those issues on which it prevailed. Plaintiff enters a cross-appeal, by which she challenges the failure to award a third year's back-pay and the division of costs which the lower court effected. Finding that the court below committed no error in finding the presence of an Equal Pay Act violation, but did erroneously limit the award of back-pay, and improperly order each party to bear its own costs, we affirm in part and reverse in part.

The Plaintiff in this case, Georgia Ann Wright Hill, worked in the J. C. Penney's Alteration Department from June 11, 1969,

---

1. The rubric Equal Pay Act refers to one portion of the comprehensive Fair Labor Standards Act. 29 U.S.C. § 201 et seq.

to July 8, 1978. At the time she was hired, she was making $1.52 per hour less than Mr. Carter, and at the time she left, she was making $1.63 less than Mr. Carter. At the time both employees were hired, the Alteration Department was woefully behind schedule. They both worked to improve this situation and, in fact, were successful in this regard. The district court, in its findings of fact, stated that at the time plaintiff started work for Penney's, there was a legitimate reason for the disparity in the two employees' salaries—that being differences in experience, responsibility, and seniority. However, the court also found that by 1977 the actual work and responsibility of Carter and the plaintiff were indistinguishable. In the court's words:

> They did the same sewing, fitting, and recordkeeping tasks with equal skill. They both ordered supplies for the department, and neither maintained time sheets, productivity goals or staffing schedules. While the Plaintiff occasionally worked in the Defendant's Women's Alteration shop when needed, Mr. Carter could not work there since he did not possess the necessary skill. In short, in the Alteration Department the J. C. Penney personnel system, with its differentiated job classifications, became a matter of form rather than substance. The Court finds that by 1977 the Plaintiff and Mr. Carter worked in jobs under similar working conditions which required equal skill, effort, and responsibility. Carter was a figurehead. His nominal position involved no real added responsibility, but entailed only theoretical responsibility.

Record on Appeal, vol. 1, at 265–66. This same set of facts led the court to conclude that Title VII had been violated by the company.

**2.** The district court made the following finding of fact with regard to Carter's exercise of responsibility:

> 4. Throughout the nine year period Carter was consulted on the hiring and firing of temporary, rush period employees. Carter was consulted by his superior, the Operations Manager, concerning the job performance of

## EQUAL PAY ACT

The Equal Pay Act provides, as its name indicates, that no employer subject to its provisions shall discriminate among its employees on the basis of sex by paying lower wages to employees of one sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions..." 29 U.S.C. 206(d)(1). It is undisputed that the two employees who made up the Alteration Department at the Almeda store performed jobs of identical skill and effort. That they performed these jobs under similar working conditions is also not challenged. The bone of contention in this case concerns the "responsibility" portion of the Equal Pay Act test. Although it is clear that Mr. Carter was considered the supervisor of the Alteration Department initially, we must consider whether he in fact exercised such responsibility during the period of time covered by this suit. As a backdrop to this discussion, we emphasize again that this department consisted of only two persons.

The responsibility which was exercised by Carter, according to defendant's proof, consisted of the following. Carter was responsible for hiring, evaluating employees, and determining when to ship out excess work in overload situations. However, when the nature of these "evaluations" is examined, one finds that the personnel evaluations which he made were not formal evaluations set down on paper but merely "oral input" to the operations manager. Plaintiff testified that she gave the same type of evaluation of Carter. Furthermore, after 1973, the annual evaluations of Carter made no mention of the supervisory nature of his position. He was not rated on the standard form for supervisors, but on the same type of form used to rate the plaintiff.[2] While there may have

> the Plaintiff, but Carter never executed an annual rating of the Plaintiff. When time permitted, the Operations Mánager informed Carter of the temporary movement of the Plaintiff to Women's Alterations, but notification was not always possible on the many occasions when Plaintiff worked in that area. The Plaintiff was questioned once in refer-

been some validity to the disparity between their salaries initially, very soon the characterization of Carter as supervisor was simply an illusory designation. The court below committed no error when it held that "Carter was a figurehead. His nominal position involved no real added responsibility, but entailed only theoretical responsibility." Record on Appeal, vol. 1, at 266.

## STATUTE OF LIMITATIONS

■ After finding that defendant had violated the Equal Pay Act, the district court awarded two years of back-pay to the plaintiff because of its conclusion that the violation was not "willful." The Equal Pay Act provides for a two year statute of limitations unless a willful violation is found, in which case the statute of limitations is three years. Plaintiff maintains that the case law in this Circuit clearly supports a finding of willfulness and consequently the district court's award must be expanded. We agree. The district court declined to hold the charged conduct willful because of its finding that "[d]efendant conscientiously sought legal counsel and attempted to obey the statute, and second, the interpretation to be given the law in this area is not completely clear." Record on Appeal, vol. 1, at 277.

■ The rule in this Circuit makes it clear that advice of counsel does not circumvent the requirements of the Equal Pay Act. In *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972), this Court stated

[w]e cannot excuse Trainor from these suspicions simply because his lawyer told him that he need not fear federal overruling of his new agreement with Teamsters'. The advice of counsel to proceed with a favorable wage settlement which undercuts the FLSA would be an easy way of circumventing the requirements of the Act—far too easy a way for us to

assume that Congress intended to subject employees to the strict two-year limitations period whenever an employer's lawyer had given him the green light to restructure their pay.

458 F.2d at 1141–42.

■ We are similarly unconvinced by the judge's statement about the complexity of this area of the law. The court clearly erred when it found this as a basis for applying the two-year statute of limitations. The court itself contradicted this statement at another point in the findings when it held, in reference to attorneys' fees, that the plaintiff raised no novel or particularly difficult questions of law. Record on Appeal, vol. 1, at 272.

There exists, in this Circuit, a long line of precedent construing "willful" in this context. *See Martinez v. Food City, Inc.*, 658 F.2d 369 (5th Cir. 1981); *Marshall v. A & M Consolidated School District*, 605 F.2d 186 (5th Cir. 1979); *Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974); *Coleman v. Jiffy June Farms, Inc., supra.* In *Brennan v. Heard*, this Court said that "an employer acts willfully and subjects himself to the three-year liability provision if he knows, or has reason to know, that his conduct is governed by the Fair Labor Standards Act." 491 F.2d at 3. It cannot be gainsaid that defendant knew its conduct was governed by this Act, since plaintiff, as early as 1974, made a complaint to the Department of Labor about an Equal Pay Act violation, and Fred Wolfe of the Department of Labor testified that the company was contacted at that time with regard to what the Department reported as a violation of the Act. Defendant admits that this contact occurred.

## LIQUIDATED DAMAGES

Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), specifies that a violator of Section 206 or 207 may be liable for back-pay and "an additional equal amount as liquidated damages." Plaintiff

ence to the performance of Mr. Carter and once concerning the performance of a temporary employee. Originally, Mr. Carter was rated on forms designated for supervisor rat-

ings, but after 1973 his ratings were rendered on "non-supervisor" forms.
Record on Appeal, vol. 1, at 265.

recognizes that this award is not automatic. A court may refuse to award liquidated damages if the violator acted in good faith or had reasonable grounds to believe his acts were not in violation.[3] 29 U.S.C. § 260.

The plaintiff finds bad faith on the part of defendant in the fact that the Department of Labor had twice investigated claims on behalf of plaintiff and, on each occasion, had reported a violation of the Equal Pay Act. Defendant responds by pointing out that the Department of Labor never brought suit as it was entitled to do. Therefore, the company did not act in bad faith in maintaining its policy on the pay differential, which was taken on the advice of counsel. Plaintiff also contends that the judgment against defendant in another Equal Pay Act case, *Marshall v. J. C. Penney Co.*, 464 F.Supp. 1166 (N.D. Ohio 1979), should have put the company on notice of the illegality of its policies. Defendant convincingly points out, however, that the case was decided after the events which form the basis for this suit had already occurred. We do not find that the court below committed an abuse of discretion when it failed to award liquidated damages, and so, we deny this portion of plaintiff's appeal. Although the advice of counsel does not protect defendant from a finding of willfulness, we do hold that in this particular case it insulates defendant from an award of liquidated damages.[4]

## COSTS

The next issue which we confront is the novel division of costs ordered by the court below. The district court determined that each party should bear its own costs for the following reason:

Each party prevailed on some issues. Each party is entitled to costs under one or both of the following provisions: 29 U.S.C. § 216(b), or Rule 54(d), Fed.R. Civ.P. As a matter of equitable discretion the Court concludes that the parties shall bear their respective costs.

Record on Appeal, vol. 1, at 281. The Court also held that none of plaintiff's claims were frivolous or without foundation. Plaintiff, therefore, argues for an extension of the rationale of *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), to the cost issue. *Christianburg* held that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless . . ." This result was foreclosed by *Jones v. City of San Antonio*, 568 F.2d 1224 (5th Cir. 1978), where this Court ruled that costs shall be awarded to the prevailing party, regardless of whether his opponent's claims are frivolous. Thus the court does not have unlimited discretion to determine the proper division of costs on those claims on which plaintiff prevailed. Under section 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), plaintiff must be awarded the costs of the Equal Pay Act claim on which she prevailed. The court below, however, failed to inquire into the costs attributable to the separate claims on which he ruled. This was error. At the very least, plaintiff must be awarded full costs on that part of the action on which she prevailed. In determining the proper division of costs, the court should only require plaintiff to pay those costs that clearly did not concern the Equal Pay Act or related Title VII claim.

## TITLE VII

Of the two Title VII claims which the court below dismissed, plaintiff appeals one to this Court. She charges that the court erred in holding that defendant did not violate Title VII when it declined to hire her for a commissioned sales position in a new store. The district court held that

---

**3.** We note that the discussion in *Coleman v. Jiffy June Farms, Inc., supra*, leads us to conclude that a finding of willfulness for limitations purposes does not compel an award of liquidated damages.

**4.** As an alternative to liquidated damages, plaintiff seeks prejudgment interest. The rule in this Circuit, however, prohibits the award of prejudgment interest in Fair Labor Standards Act cases. *Barcellona v. Tiffany English Pub*, 597 F.2d 464, 469 (5th Cir. 1977).

plaintiff failed to establish a prima facie case on this claim. A prima facie case of sex discrimination under Title VII can be made by proving the following four elements by a preponderance of the evidence: (1) plaintiff is a member of a protected class, (2) plaintiff applied and was qualified for a job for which the employer was seeking applicants, (3) that despite plaintiff's qualifications she was rejected, and (4) after her rejection, the position remained open and the employer continued to seek applicants with similar qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The court concluded that plaintiff did not prove herself qualified for a commission sales job. The court below found that defendant was seeking individuals with commissioned sales experience to begin operations at the new store. Both women and blacks were among those individuals hired for commissioned sales positions. Record on Appeal, vol. 2, at 109–10, 116–17. Although plaintiff does know a great deal about men's suits, she has no sales experience whatsoever. Clearly, such experience is the important consideration in hiring for a position selling men's suits; the court below did not err in so holding.[5]

## CONCLUSION

We affirm the district court's determination of the Equal Pay Act claim and the liquidated damages issue. We also affirm the court's decision not to award attorneys' fees to defendant. The court correctly applied the rule in *Christianburg Garment Co. v. EEOC, supra,* to this issue. The claims raised by plaintiff were not frivolous or unreasonable. We reverse the court's judgment as to the proper statute of limitations and division of costs for the reasons stated above, and remand this case to the court below for further proceedings not inconsistent with this opinion.[6]

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

GEE, Circuit Judge, with whom CLARK, Chief Judge, joins, concurring:

I concur with conviction in all aspects of the court's opinion except that compelled by our opinion in *Coleman v. Jiffy June Farms*, 458 F.2d 1139 (5th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). In that I concur only because, bound by precedent, I must.

It is true, as the court observes (p. 374), that there is a long line of precedent in our court construing "willful," as used in Section 255 of the Portal-to-Portal Act, as requiring no more scienter or volition on the part of the employer than that he "know or have reason to know" that he is *subject to the Act.* It is also true, however, that it is all traceable to *Jiffy June Farms*, the later panels having been bound as are we.

With all deference to the distinguished panel that arrived at it, I think the construction an aberrational one which reduces a volitional term to a meaning that implies at most negligence or inattention. This is not the ordinary meaning of the term or that which we accord it in other contexts, *e.g., United States v. Granda*, 565 F.2d 922, 925 (5th Cir. 1978), citing numerous opinions, among them those of the Supreme Court. These latter antedate the passage of Section 255, so that Congress knew of them when it selected the term for use there. For us to give it, in this lone context, a different meaning from the settled one smacks to me of amendment rather than of construction.

---

5. The plaintiff also contends that she was not hired in retaliation for her request for equal pay. This request caused her to be labeled a troublemaker by management. However, the personnel director's remarks on which she relies were made well after this suit was filed and hence do not support her claim. Record on Appeal, vol. 2, at 100–01, 107, 108.

6. Since it formed a basis for no part of the lower court's award of judgment, a fact which is not appealed by plaintiff, we pretermit the Title VII equal pay question.