**William Dexter WHITE**

v.

**Ronald W. COOPER, et al.**

**Civil Action No. 9:91cv177.**

United States District Court,
E.D. Texas,
Lufkin Division.

Feb. 14, 1996.

---

William Dexter White, Lovelady, TX, pro se.

Timothy Borne Garrigan, Stuckey & Garrigan, Nacogdoches, TX, for William Dexter White.

Karen Denise Matlock, Chris Lemens, Attorney General's Office, Austin, TX, for Ronald W. Cooper, Ronald R. Reed.

### MEMORANDUM OPINION REGARDING PLAINTIFF'S MOTION FOR A NEW TRIAL

HINES, United States Magistrate Judge.

This is a prisoner's civil rights suit asserted under Title 42 U.S.C. § 1983. Plaintiff, William Dexter White, an inmate at the Eastham Unit of the Texas Department of Criminal Justice, Institutional Division, sues Ronald Cooper and Ronald Reed, alleging deprivations of plaintiff's Eighth Amendment right to be free of cruel and unusual punishment. Specifically, plaintiff alleges defendant Cooper, a correctional officer, used excessive force and that defendant Reed, an institutional physician, was deliberately indifferent to serious medical needs.

The matter proceeded to trial on February 27, 1995. The trial lasted three days. Plaintiff was assisted vigorously by court-appoint-

ed trial counsel, Timothy B. Garrigan, Esq., a lawyer experienced in civil rights actions. At the conclusion of the trial, the jury returned a verdict upon written interrogatories in favor of the defendants.

### The Motion For New Trial

Before judgment on the verdict was entered, plaintiff filed timely a *pro se* motion for new trial, as well as two supplemental motions (collectively, the "Motion for New Trial"). Plaintiff asserts the following grounds for relief: (1) jury misconduct; (2) improper jury charge about need for a significant injury; (3) improper denial of discovery; (4) improper jury charge regarding vicarious liability; (5) use of a peremptory strike against the only black member of the jury panel; (6) error in accepting the verdict as it was inconsistent with a note written by the jury and (7) newly discovered evidence.

Defendants, represented by the Attorney General of Texas, respond as follows: (1) the jury did not commit misconduct; (2) the court's charge was proper; (3) denial of pretrial discovery was at best harmless error as plaintiff only speculates that helpful evidence might exist; (4) defendants' use of their preemptory strikes was proper and (5) the jury's verdict was not inconsistent with its gratuitous note.

### Proceedings

An evidentiary hearing on the motion was convened on June 8, 1995. Plaintiff again was assisted by Mr. Garrigan. The parties were allowed to submit proposed questions to each juror. The court conducted the examination, however. Each juror was interrogated about plaintiff's allegations of jury misconduct.[1]

### Analysis

Rule 59 of the Federal Rules of Civil Procedure permits a party to file a motion for a new trial. The court has discretion to grant such a motion when it is necessary to do so "to prevent an injustice." *United States v. Flores,* 981 F.2d 231, 237 (5th Cir.1993) (quoting *Delta Eng'g Corp. v. Scott,* 322 F.2d 11, 15–16 (5th Cir.1963), *cert. denied,* 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964)).

### Juror Misconduct

#### A. Allegations

Plaintiff filed an affidavit from Juror # 4[2] making these allegations: (1) Juror # 1 spoke of a relative's son who was stabbed while working as a guard with no action taken against the inmate and (2) Juror # 5 looked up terms in the court's charge in a dictionary and brought the definitions into the jury room. Juror # 4 said the words were "preponderance of evidence," "excessive force" and "significant body damage."

Plaintiff asserts Juror # 1's statement brought extraneous prejudicial information into the jury's deliberations. He says the dictionary definitions also introduced extraneous prejudicial information. Finally, he argues Juror # 5's statement indicates she did not testify truthfully at *voir dire.*

#### B. Legal Standard

Jurors' ability to impeach their own verdict is governed by Federal Rule of Evidence 606(b), which provides as follows:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous preju-

---

1. The court's order scheduling the evidentiary hearing stated that jurors would be asked only if extrinsic dictionary definitions of words were brought to the jury room. Immediately before the hearing, the court agreed to permit additional questions regarding the claim that a juror brought extraneous prejudicial information into the jury's deliberations.

2. The appendix lists the jurors by name and number according to the order in which they were chosen and seated at trial. Jurors will not be mentioned by name in the opinion. The appendix will be filed under seal.

dicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

■ When a party seeks to impeach a verdict, "evidence on the private thought processes of individual jurors will not be received. The subjective thoughts and emotions that may have influenced a juror's deliberations are shielded from inquiry.... Evidence of extraneous matters that may have reached the jury and affected its deliberations, however, may be offered." *Carson v. Polley*, 689 F.2d 562, 580–81 (5th Cir. 1982).

### C. *Application*

#### 1. *Dictionary Definitions*

Based on testimony at the evidentiary hearing, the court concludes that, at most,

definitions of the words "preponderance," "excessive," and "significant" were brought into the jury room. None of the jurors could recall what the definitions were.[3]

■ Bringing definitions into the jury room was improper and an extraneous influence. *See United States v. Steele*, 785 F.2d 743 (9th Cir.1986).[4] Use of a dictionary is not, however, prejudicial *per se*. Even if the material is prejudicial, a litigant is not entitled to a new trial if no reasonable possibility exists that the jury was influenced by the material improperly before it. *United States v. Del Rosario Ortiz*, 942 F.2d 903 (5th Cir. 1991).

The court did not define the term "excessive" in its charge. "Preponderance" was defined as meaning that evidence which persuades the jury that plaintiff's claim is more likely true than not true.[5] In defining the term "significant," the court said that for an

**3.** Juror # 1 said the definition of one word was brought into the jury room. She did not recall what the word was, but did not believe it was "significant body damage." She said the other jurors discussed the definition.

Juror # 1 also said she may have made a statement regarding a stabbing on the first day of trial, after the jurors were selected. She said her statement was that a prisoner had stabbed the son of a lady whom she worked with and was not punished. She said neither the lady nor her son was a relative.

Juror # 2 said definitions were brought into the jury room, but could not recall what the words were. She did not remember "significant body damage" being one of the words defined. She said the jury did not discuss the definitions. She said she remembered a statement being made about a stabbing once. She said the statement was not discussed.

Juror # 3, the foreman, remembered someone mentioning looking something up in a dictionary, but did not remember what the words were. He did not remember any discussion of the definitions and said he did not recall one of the words as being "significant body damage." He also said a statement about a stabbing was made once, but was not discussed.

Juror # 4, who prepared the affidavit, said definitions were brought in. She did not remember the words, but at least one word was in an interrogatory submitted to the jury. She said "significant body damage" was not defined. The jury did discuss the definitions at length. She also said Juror # 1 spoke about a stabbing several times and that the stabbing was discussed by the jurors.

Juror # 5 testified that the statement regarding a stabbing was not made repeatedly and was not discussed.

Juror # 5 also testified she looked up the word "preponderance" in a Webster's dictionary at home. She did not recall the exact definition, but remembered it had something to do with weight or how important something was. She did not look up the definition of "body damage," but did look up the definition of "significant." She did not remember looking up the word "excessive."

Juror # 6 said some definitions were brought in. The only word she recalled was "excessive." She did not recall the definition. She said the definitions were one word and that she did not remember "significant body damage" being defined. She said the definitions were not discussed. A statement regarding a stabbing was made more than once, but was not discussed heavily.

**4.** "Questions or disputes as to the meaning of terms which arise during jury deliberations should be settled by the court after consultation with counsel, in supplemental instructions." *United States v. Birges*, 723 F.2d 666 (9th Cir.), *cert. denied*, 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984).

**5.** The court defined "preponderance of the evidence" as follows: "Preponderance of the evidence means simply that evidence which persuades you that plaintiff's claim is more likely true than not true. To put it another way, if you were to put the plaintiff's evidence and any evidence that's opposed to it on the opposite sides of the scale, the plaintiff's burden is to make the scales tip slightly on the plaintiff's side.

injury to be significant, it should be weighty or momentous, when viewed in light of all the surrounding circumstances.

■ Juror # 5 could not recall what edition of Webster's Dictionary she used to look up the terms. However, the court has reviewed definitions of the words at issue in several editions of Webster's Dictionary, as well as other dictionaries. None of the dictionary definitions of "preponderance", "excessive" and "significant" varies significantly from the definitions in the court's charge.[6] Therefore, the court is of the opinion that while the introduction of dictionary definitions of the words "preponderance", "excessive" and "significant" was an external influence, the definitions were not prejudicial.

■ Even if the definitions were prejudicial, there is no reasonable possibility they influenced the jury. The word "significant" was used only in an interrogatory addressing defendant Cooper's qualified immunity defense. The jury was told to answer such interrogatory only if it affirmatively answered a previous interrogatory asking whether defendant Cooper used excessive force. As the jury concluded defendant Cooper did not use excessive force, it did not answer the interrogatory containing the word significant. As a result, plaintiff could not have been prejudiced by any definition of the

word significant. *See McQueen v. Evans,* 69 F.3d 536, No. 95–50474 (5th Cir. Oct. 11, 1995) (unpublished).

As noted earlier, "excessive" was not defined in the court's charge. The word was used in describing plaintiff's claim against defendant Cooper for "excessive force." The court instructed the jury that plaintiff was required to prove that Cooper applied force maliciously and sadistically for the very purpose of causing harm and not in a good faith effort to maintain or restore discipline. There is no reasonable possibility that introduction of a dictionary definition such as "exceeding what is proper, normal or reasonable" influenced the jury.

Finally, the dictionary definitions of "preponderance" are virtually identical to the definition in the court's charge. Again, there is no reasonable possibility that introduction of a dictionary definition such as "superiority in weight, quantity, power or importance" influenced the jury.

### 2. *Statement Regarding Stabbing*

■ Based on the jurors' testimony, the court concludes that at some point Juror # 1 told of the son of a co-worker who was stabbed by an inmate while working at a

---

**6.** Webster's Ninth New Collegiate Dictionary (hereinafter Webster's Ninth) defines preponderance as: (1) a superiority in weight, power, importance, or strength; (2)(a) as superiority or excess in number or quantity; (b) majority. Webster's New Twentieth Century Dictionary of the American Language (hereinafter Webster's New Twentieth Century) defines preponderance as: (1) the state or quality of preponderating or being preponderant; an outweighing; superiority of weight; (2) superiority of power, force or weight, in a figurative sense; as, a preponderance of evidence; (3) in gunnery, the excess of gravitol moments in the part of a gun behind the pivotal axis. Webster's II New Riverside University Dictionary (hereinafter Webster's II) defines preponderance as superiority in weight, quantity, power, or importance. The Random House Dictionary of the English Language (hereinafter Random House) defines preponderance as: (1) fact or quality of being preponderant; (2) superiority in weight, power, numbers, etc.

Webster's Ninth defines excessive as exceeding the usual, proper or normal. Webster's New Twentieth Century defines excessive as meaning beyond any given degree, measure, or limit, or

beyond the usual measure or proportion; inordinate, abnormal. Webster's II defines excessive as exceeding what is proper, normal or reasonable. Random House defines excessive as exceeding the usual or proper limit or degree; characterized by excess.

Webster's Ninth defines significant as: (1) having meaning; (2)(a) having or likely to have influence or effect; of noticeably or measurably large amount; (b) probably caused by something other than mere chance. Webster's New Twentieth Century defines significant as: (1) bearing a meaning; expressing or containing signification or sense; (b) expressive in an eminent degree; (3) expressive or suggestive of something more than what appears; full of meaning; (4) betokening something; representative of something; standing as a sign of something; (5) in mathematics, denoting figures standing for numbers. Webster's II defines significant as having or expressing a meaning; having or expressing a covert meaning; momentous. Random House defines significant as: (1) important; of consequence; (2) having or expressing a meaning; indicative; suggestive; (3) having a special, secret, or disguised meaning.

prison. She stated the inmate was not punished because he was serving a life sentence.

The court is of the opinion that this statement did not constitute extraneous prejudicial information. Instead, the statement at best reflects Juror # 1's personal, subjective prejudices.

In *United States v. Duzac*, 622 F.2d 911 (5th Cir.1980), the jury sent a note to the court saying certain prejudices among its members due to prior personal experiences prevented it from arriving at a unanimous decision. The court reminded the jury of its obligation to decide the case on the evidence and without regard to prejudice or sympathy. A unanimous verdict was returned.

The court of appeals concluded no external influence was brought to bear. The court considered the prejudice the product of personal experiences unrelated to the litigation. The proper time to discover such prejudices was when the jury was being selected. While the court acknowledged the jury was obligated to decide the case on the evidence, it said the verdict would not be disturbed because it was later learned that personal prejudices were not put aside during deliberations.

Juror # 1's statement also is similar to a juror's statement in *Martinez v. Food City, Inc.*, 658 F.2d 369 (5th Cir.1981). In *Martinez*, a case involving unpaid overtime wages, the losing party submitted a juror's affidavit stating that another juror stated during deliberations that the losing party needed to be taught a lesson. The affidavit also stated a third juror described an experience working "off the clock." The losing party moved for a new trial.

On appeal, the losing party argued the affidavit should have been admitted. The Fifth Circuit held that it was not an abuse of discretion to exclude the affidavit. Quoting *Duzac*, the court stated there was no evidence any external influence was brought to bear upon the jurors. Instead, the prejudice complained of was the product of personal experiences unrelated to the litigation. The proper time to discover such prejudice is when the jury is being selected and preemptory challenges are available.

The statement made by Juror # 1 was thus not an external influence.[7] As a result, the statement may not be considered in order to impeach the jury's verdict.[8]

### 3. *Truthfulness During Voir Dire*

The Supreme Court has addressed the standard to be used in evaluating alleged juror misconduct in answering *voir dire* questions:

> to obtain a new trial ... a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for challenge for cause.

*McDonough Power Equipment. Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984).

After reviewing the transcript of the *voir dire* examination, the court has found no question which Juror # 1 should have answered in the affirmative based on the stabbing story. The closest question is one asking whether any juror had a relationship with anyone in the prison system through which they might rely on information previously provided by prison workers in sitting on this case. Juror # 1 appears to have had no relationship with the co-worker's son who was stabbed. Nor does it appear her relationship with the co-worker was a close one. As a result, the court cannot conclude her failure to respond affirmatively to the inquiry set forth above constituted a failure to honestly respond to a *voir dire* question. Nor does it appear that an affirmative response to

---

7. Even if such statement was an external influence, four of the six jurors testified the statement was not made repeatedly and was either not discussed (three jurors) or was not discussed heavily (one juror). Accordingly, there is no reasonable possibility that the jury was influenced by the statement.

8. In contrast, when personal experiences are related to the litigation, they constitute external influences which may be used to impeach the verdict. *See Maldonado v. Missouri Pacific Ry. Co.*, 798 F.2d 764 (5th Cir.1986). In this case, however, the statement made by Juror # 1 reflected personal experiences unrelated to the litigation.

the inquiry set forth above would have required the court to excuse Juror #1 for cause.

### Improper Jury Charge

#### 1. Significant Injury

Plaintiff argues the court erred in charging the jury he needed to show a significant injury to prove excessive use of force. Plaintiff correctly points out a significant injury is not an element of a claim of excessive use of force. *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Plaintiff misinterprets the charge. The court did not tell the jury a significant injury was required. Instead, the jury was told plaintiff needed to have suffered "some harm" as the result of the use of force.

The court used the term "significant injury" in its charge concerning qualified immunity. As part of his defense, defendant Cooper asserted his actions were objectively reasonable.[9] In addition, the court submitted an interrogatory asking whether plaintiff had proven a significant injury. As noted above, this interrogatory was not answered.

The court did not use the term "significant injury" in instructing the jury on the elements of plaintiff's excessive use of force claim. Instead, the term was used in instructing the jury on the affirmative defense of qualified immunity. This use was proper. As a result, this ground is without merit.

#### 2. Vicarious Liability

During its deliberations, the jury sent out the following question:

In testimony, Drs. Reed and Ford testified that they were responsible for actions of all medical staff in their unit. Is Dr. Reed accountable for his staff's actions?

The court replied as follows:

In determining the facts relative to the plaintiff's cause of action against Dr. Reed, you are to focus on Dr. Reed's personal involvement. Dr. Reed is not liable because of acts or omissions of others. However, evidence concerning acts or omissions of other members of the medical staff may be relevant to Dr. Reed's knowledge and conduct in this case.

Plaintiff asserts this reply was erroneous.

■ Plaintiff alleged Dr. Reed failed to treat his injuries. Plaintiff did not allege Dr. Reed implemented a policy regarding the supervision of his nurses that was so deficient as to be a repudiation of constitutional rights. As a result, Dr. Reed could not be held liable for what his nurses did or failed to do.[10] The court's reply was proper and this ground is without merit.

### Improper Denial of Pretrial Discovery

Prior to trial, plaintiff filed two motions asking that the defendants be ordered to disclose certain information, including all major use of force complaints filed against defendant Cooper, for the purpose of impeachment. The court denied these motions.

At trial, however, the court permitted plaintiff to question defendant Cooper and an inmate witness regarding prior uses of force by defendant Cooper, holding that such questioning was permissible under Federal Rule

---

9. While currently applicable constitutional standards determine whether a constitutional violation has been proven, the objective reasonableness of conduct depends upon the law as it existed at the time of the conduct. *Mouille v. City of Live Oak,* 918 F.2d 548 (5th Cir.1990). Plaintiff alleged excessive force was used on June 20, 1990. At that time, a claim of excessive force required a significant injury. *Huguet v. Barnett,* 900 F.2d 838 (5th Cir.1990). As a result, the court used, and attempted to define, the term "significant injury" in explaining the law of qualified immunity.

10. To recover in a civil rights case, a plaintiff must prove the defendant participated in the

alleged wrong. *Jacquez v. Procunier,* 801 F.2d 789 (5th Cir.1990). Under Section 1983, supervisory officials are not liable for subordinates' actions on a vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) personal involvement in the deprivation, or (2) a sufficient causal connection between his conduct and the constitutional violations. *Thompkins v. Belt,* 828 F.2d 298 (5th Cir.1987). To show a causal connection, the supervisor would have to "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* at 304.

of Evidence 404(b) as evidence of intent. Plaintiff now argues that he should have been provided information regarding prior uses of force prior to trial.

■ Whatever the correctness of the court's ruling on plaintiff's pretrial motion, plaintiff was allowed to question defendant Cooper and an inmate witness at trial regarding prior uses of force. This cured any prejudice plaintiff may have suffered due to the court's pretrial rulings. Plaintiff has not advanced any specific evidence of prior uses of force which could have been used to impeach defendant Cooper's testimony at trial.

### The Defendants' Use of a Preemptory Strike to Eliminate the Only Black Member of the Jury Panel

At the conclusion of *voir dire*, the defendants peremptorily struck the only black member of the panel. Plaintiff objected, and the court overruled the objection. Plaintiff asserts this strike violated the Equal Protection Clause.

■ A party can challenge the use of a peremptory strike that excludes a prospective juror on the basis of race. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). A litigant may challenge a peremptory strike regardless of his race since the objection asserts the juror's equal protection rights. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

■ A three-step process is used in evaluating *Batson* claims.[11]

■ Applying the three step analysis, the court finds plaintiff may have made out a *prima facie* challenge. The court further finds the defendants proffered race-neutral reasons for the strike. Finally, the court finds plaintiff has not proved purposeful discrimination. The prospective juror's responses and actions did not necessarily warrant the conclusions drawn by counsel. However, the reasons proffered are not, however, so weak or unpersuasive to conclude they were pretextual.[12] Accordingly, this ground is without merit.

### The Court Erred in Accepting a Verdict Inconsistent with a Note Written By the Jury

■ The jury answered two interrogatories:

(a) Do you find from a preponderance of the evidence that Ronald W. Cooper deprived plaintiff of a right secured to him by the Constitution of the United States by using excessive force, and that such deprivation was a proximate cause of injury or damage to plaintiff?

(b) Do you find from a preponderance of the evidence that Ronald R. Reed deprived plaintiff of a right secured to him by the Constitution of the United States by denying medical care, and that such deprivation was a proximate cause of injury or damage to plaintiff?

---

11. First, the complaining party must make a *prima facie* showing that opposing counsel exercised a peremptory challenge based on race. Once this has been shown, the burden shifts to the other party to state a race-neutral explanation which is clear, reasonably specific, and related to the case being tried. *United States v. Romero–Reyna*, 867 F.2d 834, *aff'd on remand*, 889 F.2d 559 (5th Cir.1989), *cert. denied*, 494 U.S. 1084, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990). The court must then determine whether purposeful discrimination has been proven. The complaining party has the burden to prove the proffered reason was inadequate or pretextual. *United States v. Bentley–Smith*, 2 F.3d 1368 (5th Cir.1993).

12. After the strike was made, counsel for plaintiff stated that as the defendants did not ask juror Borders any direct questions, the implication arises he was struck only because of his race. Counsel for the defendants gave three reasons for the strike: (1) when counsel for the defendants asked general questions about law enforcement and about what type of people the jury panel would believe, juror Borders shook his head in response to a question when counsel wanted him to nod his head; (2) counsel had reservations about picking people who were not attached to the community and juror Borders was very hesitant to go into his background and was unmarried and (3) when juror Border said he had a speech impediment and the court said it was not noticeable, everyone else laughed while juror Borders remained blank-faced.

The jury answered each interrogatory "No". In addition, the jury delivered the following note:

We the jury would hereby like to express our feelings concerning the injury to inmate White on June 20, 1991. We sympathize with his injuries and want him and his family to know that his feelings were not ignored nor that his plea was to no avail. We also want them to know that we feel for them for what they have gone through.

We feel the medical care was inadequate due to understaffing of the Eastham Unit. We hope that action can be taken in the future to help alleviate problems such as these from happening in the future at any correctional facility.

Plaintiff argues that the jury's note demonstrates that the jury found that he suffered an injury due to the use of excessive force. As a result, he argues that the note is inconsistent with the jury's answer to the first interrogatory listed above.

This argument is without merit. The jury could have found that plaintiff sustained injuries due to a use of force by defendant Cooper without concluding that the use of force was excessive. Similarly, the jury could have found that medical care at the Eastham Unit was inadequate without concluding defendant Reed was deliberately indifferent.

### Newly Discovered Evidence

In support of this ground, plaintiff has submitted an affidavit signed by Dr. Reed, apparently in another case. In the affidavit, Dr. Reed states that in his capacity as Unit Health Authority he is responsible for supervising staff, examining and treating individual inmates and supervising overall operations with the unit medical department. Plaintiff asserts that this affidavit directly contradicts Dr. Reed's testimony at trial.

In the context of a motion for new trial, newly discovered evidence warranting a new trial is such evidence that: (1) would probably have changed the outcome of the

trial; (2) could not have been discovered earlier with due diligence and (3) is not merely cumulative or impeaching. *Diaz v. Methodist Hospital,* 46 F.3d 492 (5th Cir.1995).

The court does not believe that the affidavit directly contradicts Dr. Reed's trial testimony.[13] Regardless, plaintiff had an opportunity to cross examine Dr. Reed at trial concerning his responsibilities. Further, the evidence provided in the affidavit would have been useful merely for the purpose of impeaching Dr. Reed's trial testimony.

### Conclusion

For the foregoing reasons, plaintiff's Motion for a New Trial will be denied. An appropriate order shall be entered in accordance with this Memorandum Opinion and a Final Judgment shall be entered in accordance with the answers to the interrogatories.

---

13. In his affidavit Dr. Reed describes his responsibilities from an organizational standpoint. Being responsible on an organizational chart is not the same as being responsible in the context of Section 1983 litigation.