Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

SABINE IRRIGATION CO., INC., et al., Defendants,

C.H. Alberding, Defendant-Appellant.

No. 82–3120
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 14, 1983.

**192**

Kimball, McLeod & Dow, G. Allen Kimball, Lake Charles, La., for defendant-appellant.

Beate Bloch, Atty., U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

This action was brought by the Secretary of Labor under Section 17 of the Fair Labor Standards Act of 1938, as amended ("FLSA" or "Act"), 29 U.S.C. § 201 *et seq.*, to enjoin Sabine Irrigation Co., Inc. (Sabine), Charles H. Alberding and Joseph E. Scally from violating the Act's minimum wage requirement and to restrain them from continuing to withhold unpaid wages. Following a bench trial the district court entered judgment in favor of the Secretary against Alberding and Sabine, but dismissed the action against Scally. *Donovan v. Sabine Irrigation Co., Inc.*, 531 F.Supp. 923 (W.D.La.1981). Alberding alone appeals, contending that the district court erred in (1) holding that he was an employer within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), and as such had willfully violated the Act's minimum wage provisions throughout the period charged, and (2) imposing prospective and restitutionary injunctions. Finding no merit in these contentions, we affirm.

### Background Facts

Sabine, a Louisiana corporation with its principal office in St. Charles, Louisiana, was engaged until early 1979 in the business of supplying water for irrigation to rice farmers in Calcasieu Parish, Louisiana. Water was pumped from the Sabine River into a central canal, and then diverted into the rice fields. This water was vital to the production of the rice crop, the bulk of which was sold in interstate commerce. Sabine's employees operated the pumping station, inspected and repaired levees and constructed and maintained the bridges, gates, flumes and underpasses.

Alberding and a co-venturer each purchased one-half of Sabine's stock in the early 1950s. Alberding transferred this stock in the early 1960s, but continued as corporate president, a position he has held for over 30 years. During the pertinent period, Scally served as Sabine's vice-president, and Alberding's wife, B.W. Alberding,

was secretary-treasurer. Sabine Water Canal, Inc. (Sabine Canal) and Washington-Youree Corporation (Washington), Louisiana corporations managed by Alberding in the capacity of president, with Scally as vice-president and B.W. Alberding as secretary-treasurer, each acquired 50% of Sabine's stock sometime prior to 1976. Tucker Moore, Alberding's son-in-law, owns 100% of the stock in both Sabine Canal and Washington, and is employed as a hotel manager by Gulf Beach Club, Inc. Alberding owns the controlling interest in Gulf Beach and serves as its president.

The period covered in the Secretary's complaint extends from October 1976 to November 1978. Throughout this period, Sabine utilized a Tulsa, Oklahoma business address and shared a Tulsa office with Sabine Canal, Washington, and multiple other corporations owned and operated by Alberding, including the Tulsa Apartments Corporation, Hotel Services Company and Universal Wholesale Supply Company. Primary responsibility for Sabine's daily operations was delegated to Joe Bond, on-site manager. Bond supervised the work crews until stricken with cancer in 1976, whereupon Gerald Clark assumed this duty. Mrs. Bond, who assisted her husband once he became ill and briefly held the post of general manager upon his death in April 1978, tabulated employee work hours and forwarded payroll work sheets to Miriam Covington, a 30-year employee of Hotel Services Company who managed the Tulsa office, and Shirley Goddard, an employee of Tulsa Apartments Corporation. Covington and Goddard regularly performed services for Sabine but were not on its payroll.

Due to the transient character of the workforce, the Bonds were allowed to compensate for the continuous turnover by filling vacant positions as they arose. However, the Bonds were not authorized to hire additional laborers, deviate from the $2.00 per hour pay rate established by the Tulsa office, write checks on Sabine's checking account with a St. Charles bank, or pay bills. The Tulsa office reimbursed the Bonds for any emergency purchases. Inquiries by Sabine's suppliers regarding arrears in payment on trade accounts were directed to Tulsa. Any proceeds from the sale of rice received by the Bonds were transmitted to the Tulsa office or deposited in Sabine's account. Alberding's permission was required for special purchases, the addition of extra men to the workforce and the transfer of funds from one or more of his other corporations when needed to meet Sabine's payroll and trade obligations.

The district court described the Tulsa office's pervasive control of Sabine's affairs, and Alberding's role therein, as follows:

At all times material to this action, Sabine's Tulsa office administered the business affairs of Sabine Irrigation Company and defendant Alberding maintained contact with the Tulsa office several times a week. Miriam Covington ... and Shirley Goddard ... were responsible for, and did pay, all bills incurred by Sabine Irrigation Company. If there were insufficient funds in the Sabine account, defendant Alberding would authorize Mrs. Covington to transfer funds from the Hotel Services account. On occasion, defendant Alberding would send a personal check or a check drawn on the account of some other corporation to cover the deficiency. All payroll checks for Sabine's employees were cut and mailed from the Tulsa office and all records regarding payment of Sabine's bills and payroll were kept in the Tulsa office. The Tulsa office deducted federal income tax and social security from the payroll and all records pertaining to these withholdings were kept in the Tulsa office. The Tulsa office deducted federal income tax and social security from the payroll and all records pertaining to these withholdings were kept in the Tulsa office. The Tulsa office handled all insurance arrangements for Sabine Irrigation and ensured that all ad valorem taxes were paid on Sabine real estate. Finally, the Tulsa office handled all Sabine's income tax returns.

531 F.Supp. at 926–27 (citations omitted).

Evidence of numerous ledger transactions reflecting the transfer of funds between

Sabine, Alberding, Scally, or one of the many corporations owned and/or controlled by Alberding was offered at trial. According to the record, Sabine advanced sums toward the rent of Alberding's Chicago office, made a substantial loan and paid unidentified "fees" to one or more of Alberding's corporations, and shifted the benefit of a $12,000 crop damage loss to Alberding. Regardless of whether these and other adjustment entries in Sabine's books involved mere "paper" transfers or actual exchanges of funds, they tend to show Alberding's dominion over Sabine's financial affairs.

A decline in the world rice market during the post-Vietnam War era caused a devastating reversal of Sabine's fortunes. Only infusions of capital by Alberding, commencing in 1976, saved the corporation from financial collapse. Sabine ceased doing business in early 1979, when Alberding discontinued monetary support, but remains a viable corporate entity.

Based on these facts, the district court concluded that Alberding was an employer, with Sabine, of the corporation's irrigation personnel and enjoined both defendants from future violations of the FSLA's minimum wage provisions and from failing to make restitution of backpay accruing from October 1976 to January 1979. Appellant Alberding concedes that Sabine is an employer covered by the Act, and that it did not comply with federal minimum wage requirements in the years complained of,[1] but argues that he is not an employer, that even if he were, his transgressions were not willful for purposes of the application of the three-year limitations and, finally, that the issuance of the injunction was improper.

### Employer

■ An "employer" is defined under Section 3(d) of the Act as including "any person acting directly in the interest of an employer in relation to an employee." This term has been interpreted to encompass one or more joint employers, *Falk v. Brennan,*

414 U.S. 190, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973); *Hodgson v. Griffin and Brand of McAllen, Inc.,* 471 F.2d 235 (5th Cir.), *cert. denied,* 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973); *Wirtz v. Lone Star Steel Co.,* 405 F.2d 668 (5th Cir.1968). 29 C.F.R. § 791.2 (1982). Whether a party is an employer or joint employer for purposes of the FSLA is essentially a question of fact; accordingly, appellate review is subject to the clearly erroneous standard.

■ Our determination of Alberding's status is not circumscribed by formalistic labels or common-law notions of the employment relationship, *Bartels v. Birmingham,* 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947); *Mednick v. Albert Enterprises, Inc.,* 508 F.2d 297 (5th Cir.1975). Instead, our analysis must focus upon the totality of the circumstances, underscoring the economic realities of the irrigation workers' employment. *Real v. Driscoll Strawberry Associates, Inc.,* 603 F.2d 748 (1978); *Hodgson v. Griffin and Brand of McAllen, Inc.* See *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). In so doing, we adhere to the firmly-established guidon that the FLSA must be liberally construed to effectuate Congress' remedial intent. *Donovan v. Janitorial Services, Inc.,* 672 F.2d 528 (5th Cir.1982); *Donovan v. I–20 Motels, Inc.,* 664 F.2d 957 (5th Cir. 1981).

■ Alberding maintains that as nominal president of Sabine he may not be held accountable for FLSA infractions simply because his monetary transfusions enable Sabine to stave off bankruptcy, there being no evidence that he owned stock in the company or exerted supervisory control over daily corporate operations. Respecting the first argument, we perceive the parameters of § 203(d) as sufficiently broad to encompass an individual who, though lacking a possessory interest in the "employer" corporation, effectively dominates its administration or otherwise acts, or has the

---

1. Sabine's employees were paid $2.00 per hour from October 1976 through November 1978, whereas the minimum wage was $2.20 per hour in 1976, $2.30 per hour in 1977 and $2.65 per hour in 1978.

power to act, on behalf of the corporation vis-a-vis its employees.[2] Assuming *arguendo* that Alberding had no authority to direct Sabine's activities, he would remain accountable for violations of the FLSA if he independently exercised control over the work situation. *See Hodgson v. Griffin and Brand of McAllen, Inc.; Shultz v. Falk*, 439 F.2d 340 (4th Cir.1971), *rev'd on other grounds sub nom, Falk v. Brennan*, 414 U.S. 190, 94 S.Ct. 427, 38 L.Ed.2d 406 (1972).

■ Contrary to appellant's suggestion, neither the Act nor jurisprudence designates stock ownership in a corporate employer as the *sine qua non* of employer status where other forms of control of the employment relationship have been proven. No one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case. *See Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961).

■ Guided by this precept, we are persuaded that the district court properly resolved the question of Alberding's status:

Since 1976, Mr. Alberding, through his employee Miriam Covington, has exercised pervasive control over the business and financial affairs of Sabine Irrigation. The evidence is clear that Mr. Alberding maintained continuous contact with his Tulsa office and indirectly controlled many matters traditionally handled by an employer in relation to an employee (such as payroll, insurance, and income tax matters). In addition, the evidence is clear that Mr. Alberding's financial gymnastics directly affected Sabine's employees by making it possible for Sabine to meet its payroll and keep its employees supplied with the equipment and materials necessary to perform their jobs. Thus, we hold that Mr. Alberding is an employer within the meaning of the Act and therefore personally liable along with Sabine Irrigation Co. for any wages found to be due and owing to the employees in question.

531 F.Supp. at 929.

The trial court discounted appellant's self-serving disavowals of involvement in Sabine's operations. Instead, the court credited the substantial evidence of Sabine's symbiotic association with various corporations owned and/or managed by Alberding, and the latter's dominion over the Tulsa office and resultant authority, however indirect, over the conduct of Sabine's business, including all significant phases of its relationship with the irrigation personnel. While the Bonds may have performed many of the functions of an employer, ultimate control was vested in Alberding. *Donovan v. Janitorial Services, Inc.; Shultz v. Mack Farland & Sons Roofing Co., Inc.*, 413 F.2d 1296 (5th Cir.1969). The corporation's very survival depended upon Alberding's largesse, with his decision to terminate all financial aid precipitating its near-demise. On the present record, we are convinced that the district court correctly found that Alberding was an employer within the purview of the Act.

*Willfulness*

An action for delinquent minimum wage payments is foreclosed unless instituted within two years after the cause of action accrues, except where the defendant's noncompliance was willful, in which case the action may be commenced within three years after said accrual. Section 6(a) of the

**2.** As noted above, Tucker Moore, Alberding's son-in-law and an employee of a corporation of which Alberding is majority stockholder and president, owns all stock in Sabine by virtue of his ownership of Sabine Canal and Washington. *Compare Donovan v. Janitorial Services, Inc.* (where individual defendant owned no stock in subject corporation, but his spouse owned 35% of employer company and otherwise controlled its operations through his wholly-owned corporations, said defendant was deemed to be an employer of subject company's personnel). Regardless of the locus of title to Sabine's stock and the nature and extent of Alberding's control or ability to control its titular holder, Moore, the economic realities extant herein dictate that we view Alberding's substantial investment in the corporation as giving rise to a strong inference of his control of Sabine's business and financial affairs.

Portal-to-Portal Act of 1947, as amended, 29 U.S.C. § 255(a). The Secretary filed suit against Sabine, Alberding, and Scally in October 1979. Alberding contests the trial court's finding of willfulness and consequent application of the three-year limitation period. He supports this contention by advancing the argument that he cannot be deemed a statutory employer. We are not persuaded.

▮ As we noted in *Coleman v. Jiffy-June Farms, Inc.,* 458 F.2d 1139, 1142 (5th Cir.1971), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972), the "test" for willfulness entails a determination of whether "there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA. Stated most simply, ... the test should be: Did the employer know the FLSA was in the picture?" Or, as we opined in *Brennan v. Heard,* 491 F.2d 1, 3 (5th Cir.1974) (emphasis in the original), "an employer acts willfully and subjects himself to the three year liability if he knows, or has reason to know, that his conduct is *governed* by the Fair Labor Standards Act." *See also Donovan v. Grantham,* 690 F.2d 453 (5th Cir.1982); *Hill v. J.C. Penney Co., Inc.,* 688 F.2d 370 (5th Cir.1982). Neither an employer's good faith nor his ignorance of the governing statutes or regulations precludes a finding of willfulness. *Brennan v. Heard. See Hill v. J.C. Penney Co., Inc.; Marshall v. Union Pacific Motor Freight Co.,* 650 F.2d 1085 (9th Cir.1981).

▮ When measured against these standards, the evidence of appellant's disregard of the Act's minimum wage requirements is adequate to establish willfulness, thereby triggering the three-year liability provision. Sabine was investigated by the Wage and Hour Division of the Department of Labor in 1971, and the Act's proscriptions were then explained. Alberding and Scally were named defendants in three FLSA actions brought by the Secretary,[3] one of which culminated in a stipulation of compliance and dismissal. Alberding's protestation that he was unaware of the 1974 amendments revoking the prior exemption for irrigation laborers is of no avail, given his general knowledge that the FLSA was in the picture. *Donovan v. Grantham; Coleman v. Jiffy-June Farms, Inc.*

### *Injunctive Relief*

▮ Finally, appellant contends that the district court abused its discretion in restraining him from future violations of the FLSA and from withholding payment of statutory minimum wages adjudged due and owing. Section 17 of the FLSA, 29 U.S.C. § 217,[4] authorizes the district courts to issue both prospective and restitutionary injunctions. *Donovan v. Brown Equipment and Service Tools, Inc.,* 666 F.2d 148 (5th Cir.1982). Where a corporate officer has been found to have acted "directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), he may be enjoined along with the corporate employer, *Donovan v. Hamm's Drive Inn,* 661 F.2d 316 (5th Cir.1981), even though he no longer falls within the statutory definition at the time the action is initiated. *Donovan v. American Leader Newspapers, Inc.,* 524 F.Supp. 1144 (M.D. Fla.1981); *Wirtz v. Soft Drinks of Shreveport, Inc.,* 336 F.Supp. 950 (W.D.La.1971). Generally speaking, the propriety of a grant of injunctive relief in a § 217 action is an equitable matter, committed in the first instance to the sound discretion of the district court. *Shultz v. Parke,* 413 F.2d 1364 (5th Cir.1969).

**3.** *Brennan v. Rolling Hills Management Corp.,* Docket # 71–C–240 (N.D.Okla.1971); *Dunlop v. Tulsa Apt. Co.,* Civil Action # 73–C–309 (N.D.Okla.1973); *Dunlop v. McAlester Corp.,* Civil Action # 75–117–C (E.D.Okla.1975).

**4.** Under Section 17 of the Act, 29 U.S.C. § 217: The district courts, ... shall have jurisdiction, for cause shown, to restrain violations of section 15 [29 U.S.C. § 215], including in the case of violations of section 15(a)(2), [29 U.S.C. § 215(a)(2), rendering unlawful the failure to comply with minimum wage and overtime strictures of the Act], the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this Act ....

Once a finding of past due wages is made, however, the district court's discretion to refuse the Secretary's request for a restitutionary injunction is limited, and must be tempered by considering whether the prerequisites for this remedy have been met and the policy reasons underlying Congress' enactment of the legislation have been fulfilled. *Donovan v. Grantham; Donovan v. Brown Equipment and Service Tools, Inc.* Thus the court must ascertain whether an injunction commanding restitution of delinquent back-pay furthers the FLSA's twin purposes of compensating the injured employees, and of redressing a continuing public wrong by depriving a violator of any gains accruing to him through his violations, and protecting those employers who comply with the Act's wage requirements from having to compete unfavorably with those who do not. *Donovan v. Brown Equipment and Service Tools, Inc.*, 666 F.2d at 157. When examined against this background, the district court's imposition of a restitutionary injunction was within his statutorily prescribed discretion. This remedy did not penalize Alberding, but simply compelled his remission of wages to which his former employees were clearly entitled.

In deciding whether to issue a prospective injunction, the district court must evaluate the previous conduct of the employer and the dependability of his promises for future compliance. In light of the evidence presented, including the proliferation of FLSA suits brought against Alberding and his corporations within a five-year period, and the limited efforts to conform to legislative strictures, we conclude that the district court properly enjoined appellant from further noncompliance with the Act.

AFFIRMED.