**FACCHIANO CONSTRUCTION COMPANY, INC., Michael Facchiano, Sr., Michael Facchiano, Jr., and John Facchiano, Appellants,**

*v.*

**The UNITED STATES DEPARTMENT OF LABOR, The Secretary of Labor Lynn Martin, in her official capacity, John R. Fraser, Acting Administrator, Wage and Hour Division, in his official capacity, The Comptroller General of the United States of America, Robert L. Clarke, in his official capacity, Appellees.**

No. 92–3212.

United States Court of Appeals, Third Circuit.

Argued Nov. 2, 1992.

Decided March 8, 1993.

Frederick J. Francis (argued), Meyer, Unkovic & Scott, Pittsburgh, PA, for appellants, Facchiano Const. Co., Michael Facchiano, Sr., Michael Facchiano, Jr., John Facchiano.

William J. Stone, Joan Brenner (argued), U.S. Dept. of Labor, Paul J. Brysh, Office of U.S. Atty., Pittsburgh, PA, for appellees.

Before: SLOVITER, Chief Judge, STAPLETON and LAY *, Circuit Judges.

### OPINION OF THE COURT

LAY, Senior Circuit Judge.

Facchiano Construction Company, Inc., Michael Facchiano Jr., Michael Facchiano Sr. and John Facchiano appeal the order of the district court[1] debarring them from contracting with the federal government for three years pursuant to 29 C.F.R. § 5.12(a)(1) (1986). Our review of this matter is plenary. *General Comm. Of Adjustment, United Transp. Union v. CSX R.R. Corp.*, 893 F.2d 584, 589 (3d Cir.1990). We now affirm in part and vacate and remand in part.

## I.  BACKGROUND

Between 1982 and 1984, Facchiano Construction Company had been paying wages

---

* Honorable Donald P. Lay, Senior Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. The Honorable Alan N. Bloch, United States District Judge for the Western District of Pennsylvania.

below prevailing standards for work done on HUD contracts in violation of the Housing and Community Development Act of 1974, 42 U.S.C. § 5310 (1988).[2] Following a criminal investigation by the Department of Labor (DOL), Michael Facchiano, Jr., the company secretary, pled guilty to violations of mail fraud or sending falsified payrolls through the mail pursuant to 18 U.S.C. 1341 (1988) and was sentenced to six months imprisonment.[3] The Department of Housing and Urban Development (HUD) then filed an administrative complaint against the Company and Michael Facchiano, Jr. seeking to debar them from participating in HUD funded programs pursuant to 24 C.F.R. § 24.6 (1985). On March 5, 1986, HUD's Board of Contract Appeals ordered the debarment of the Company and Michael Facchiano, Jr. from participation in HUD programs for 18 months. With credit for suspension already served, the debarment period ended November 15, 1986.

While the HUD debarment proceeding was pending, DOL commenced its own proceeding to debar the Company, Michael Facchiano, Sr., Michael Facchiano, Jr. and John Facchiano from contracting with the Federal Government as a whole pursuant to 29 C.F.R. § 5.12(a)(1) (1986). The Facchianos sought injunctive relief in district court to stay the administrative proceedings on the ground that DOL's debarment action was precluded by principles of res judicata and collateral estoppel by reason of the HUD disbarment. The district court granted summary judgment for DOL, holding that res judicata and collateral estoppel did not apply. On appeal, this court reversed the order granting summary judgment on the issue of whether res judicata and collateral estoppel applied to bar DOL's debarment proceeding. *Facchiano*

*v. United States Dep't of Labor*, 859 F.2d 1163, 1167 (3d Cir.1988), *cert. denied*, 490 U.S. 1097, 109 S.Ct. 2447, 104 L.Ed.2d 1002 (1989). This court remanded this issue to be determined initially at a DOL administrative hearing. *Id.*

The hearing was held January 18, 1990 before Administrative Law Judge, George P. Morin. The ALJ ruled that res judicata and collateral estoppel did not bar DOL's proceeding, but that only the Company could be debarred, not the individuals. The ALJ ordered that the Company be debarred for 18 months. The Wage Appeals Board reversed the ALJ and ruled that both the Company and the individuals should be debarred for a period of three years.

The Facchianos once again appealed the Board's ruling to the district court. The district court granted summary judgment to DOL finding that the Wage Appeals Board's debarment of the Plaintiffs for three years was within its statutory authority under 29 C.F.R. § 5.12(a)(1). It also upheld the Board's determination that res judicata and collateral estoppel were not applicable. Plaintiffs once again appeal to this court.

## II. DISCUSSION

### A. *Executive Order No. 12549*[4]

■ Executive Order No. 12549 provides for government-wide debarment and suspension. On February 18, 1986, President Reagan ordered:

> By the authority vested in me as President by the Constitution and laws of the United States of America, and in order to curb fraud, waste, and abuse in Federal programs, increase agency accountability, and ensure consistency among agency

---

**2.** Facchiano Construction Company's certified payrolls showed that employees received a higher wage rate than actually paid (Jt App. 32a; 124a–126a; 201a), that employees were misclassified (Jt App. 201a), that Contract Work Hours and Safety Standards Act (CWHSSA) overtime was underpaid (Jt App. 33a, 133a), that fewer hours were reported than employees had worked (Jt App. 33a), and that the names of certain employees were omitted (Jt App. 33a, 130a). The payrolls had been certified as correct by John Facchiano, the company treasurer.

**3.** Fines were also levied against Michael Facchiano Jr. and the Company.

**4.** This issue was not argued in the original briefs, but because of the relevant language of the executive order, this court sought supplemental briefing as to the applicability of the order.

regulations concerning debarment and suspension of participants in Federal programs, it is hereby ordered that:

Section 1.(a) To the extent permitted by law and subject to the limitations in Section 1(c), Executive departments and agencies shall participate in a system for debarment and suspension from programs and activities involving Federal financial and nonfinancial assistance and benefits. *Debarment or suspension of a participant in a program by one agency shall have government-wide effect.*

51 Fed.Reg. 6370 (1986) (emphasis added). In their supplemental brief, plaintiffs assert that because President Reagan issued Executive Order 12549 on February 18, 1986 and HUD's debarment order was issued March 15, 1986, the failure of DOL to give government-wide effect to the HUD debarment precludes DOL from now attempting to impose the same penalty by debarring the Facchianos on a government-wide basis.

We conclude that DOL is not precluded by reason of the Executive Order from debarring the Facchianos from all government contracts. Generally, there is no private right of action to enforce obligations imposed on executive branch officials by executive orders. In *Independent Meat Packers Ass'n v. Butz*, 526 F.2d 228, 236 (8th Cir.1975), *cert. denied*, 424 U.S. 966, 96 S.Ct. 1461, 47 L.Ed.2d 733 (1976), the Eighth Circuit held that "Executive Order No. 11821 was intended primarily as a managerial tool for implementing the President's personal economic policies and not as a legal framework enforceable by private civil action." *Id.* The D.C. Circuit has held that executive orders without specific foundation in congressional action are not judicially enforceable in private civil suits. *See In re Surface Mining Regulation Litig.*, 627 F.2d 1346, 1357 (D.C.Cir. 1980) (Executive Order No. 11821 and OMB Circular No. A–107 provide no basis for overturning the interim regulations); *Manhattan–Bronx Postal Union v. Gronouski*, 350 F.2d 451, 456–57 (D.C.Cir. 1965), *cert. denied*, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966).

The purpose of Executive Order No. 12549 is "to curb fraud, waste, and abuse in Federal programs, increase agency accountability, and ensure consistency among agency regulations concerning debarment and suspension...." The Order was intended to be an internal housekeeping measure or "managerial tool" mandating government efficiency. Plaintiffs have not shown that the order was designed for their benefit. *Cf. Independent Meat Packers Ass'n*, 526 F.2d at 236. Thus, we conclude that Executive Order 12549 does not constitute a basis to challenge the DOL government-wide debarment order.

Even if the plaintiffs could challenge DOL's debarment order on the basis of Executive Order No. 12549, we find that the executive order did not become effective until well after DOL had begun its proceedings.[5] It is clear from the language of the executive order that it was not intended to be self-executing, but would be dependent upon the issuance of guidelines by the Office of Management and Budget (OMB) and subsequent implementing regulations by the agencies.[6]

---

**5.** The Department of Labor issued its charging letter, notifying the Facchianos of its intent to seek their debarment from all contracting with the federal government on December 13, 1985.

**6.** Section 6 specifically states:
The Director of the Office of Management and Budget is authorized to issue guidelines to Executive departments and agencies that govern which programs and activities are covered by this Order, prescribe government-wide criteria and government-wide minimum due process procedures, and set forth other related details for the effective administration of the guidelines.

Section 3 states:
Executive departments and agencies shall issue regulations governing their implementation of this Order that shall be consistent with the guidelines issued under Section 6. Proposed regulations shall be submitted to the Office of Management and Budget for review within four months of the date of the guidelines issued under Section 6. The Director of the Office of Management and Budget may return for reconsideration proposed regulations that the Director believes are inconsistent with the guidelines. Final regulations shall be published within twelve months of the date of the guidelines.

OMB issued "Guidelines for Nonprocurement Debarment and Suspension" on May 29, 1987. *See* 52 Fed.Reg. 20360–69 (May 29, 1987). After an extended notice and comment period, twenty-eight agencies published a final common rule on "government wide nonprocurement suspensions and debarment" in May 1988. *See* 53 Fed. Reg. 19160 *et seq* (May 26, 1988). We conclude that the DOL properly continued operating according to its existing regulations while awaiting from OMB direction that it was governed by the Executive Order and guidance as to government-wide minimum due process procedures.

### B. *Res Judicata and Collateral Estoppel*

■ The Facchianos assert that DOL's debarment order is precluded because DOL and HUD are in "privity" for res judicata purposes. They contend that DOL and HUD, both being Cabinet departments, are subject to direct coordination and control by the President of the United States. By permitting HUD to proceed with the initial debarment, plaintiffs assert that the Executive Branch coordinated the enforcement of federal labor standards pursuant to express terms of the applicable statute and regulatory scheme.[7] Plaintiffs further contend that because the HUD and DOL debarments "turn on the essential similarity of the underlying events giving rise to the various legal claims," *Davis v. United States Steel Supply Div. of U.S. Steel*

*Corp.,* 688 F.2d 166, 171 (3d Cir.1982), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983), res judicata and collateral estoppel bar DOL's subsequent debarment proceeding.

The Supreme Court addressed the issue of res judicata as applied to governmental parties in *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 402, 60 S.Ct. 907, 917, 84 L.Ed. 1263 (1940). There, the Court held that "there is privity between officers of the same government so that judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government." *Id.* at 402–03, 60 S.Ct. at 917. The Court, however, went on to say "[t]he crucial point is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy." *Id.* at 403, 60 S.Ct. at 917. We are therefore directed to look to the authority Congress delegated to both administrative agencies to bind the government in a final adjudication.

The Department of Housing and Urban Development Act, 42 U.S.C. § 3535(d) authorizes the Secretary of HUD to "make such rules and regulations as may be necessary to carry out his functions, powers, and duties." HUD thereby issued regulations regarding the debarment, suspension, and ineligibility of contractors. *See* 24 C.F.R. § 24 (1985). These regulations de-

---

**7.** This scheme includes Reorganization Plan No. 14 of 1950, 15 Fed.Reg. 3176 (1950), *amended by* Pub.L. No. 91–258, 84 Stat. 235 (1970), (codified at 5 U.S.C.App. (1988)), which states:

In order to assure coordination of administration and consistency of enforcement of the labor standards provisions of each of the following Acts by the Federal agencies responsible for the administration thereof, the Secretary of Labor shall prescribe appropriate standards, regulations, and procedures, which shall be observed by these agencies, and cause to be made by the Department of Labor such investigations, with respect to compliance with and enforcement of such labor standards, as he deems desirable....

The purpose of this plan was articulated in the Message of the President, March 13, 1950:

The methods adopted by the various agencies for the enforcement of labor standards vary widely in character and effectiveness. As a result, uniformity is lacking and the degree of protection afforded workers varies from agency to agency.

In order to correct this situation, this plan authorizes the Secretary of Labor to coordinate the administration of legislation relating to wages and hours on all federally financed or assisted projects by prescribing standards, regulations, and procedures to govern the enforcement activities of the various Federal agencies and by making such investigations as he deems desirable to assure consistent enforcement. The actual performance of enforcement activities, normally including the investigation of complaints of violations, will remain the duty of the respective agencies awarding the contracts or providing the Federal assistance.

*Id.*

fine "Debarment" as "exclusion from a participation from *HUD* programs for a reasonable, specified period of time...." 24 C.F.R. § 24.4(a) (1985) (emphasis added). Moreover, the regulations state:

Debarment, suspension, placement in an ineligible status, temporary denial of participation and conditional participation are measures which may be invoked by offices of the Department either to exclude or to disqualify contractors and grantees from participation in Department programs. These measures shall be used for the purpose of protecting the public and are not for punitive purposes. 24 C.F.R. § 24.5(a) (1985).

The plain language of the statute and regulatory scheme limits HUD's debarment authority to participation in HUD programs. At the time of its proceeding, HUD had no authority to debar participation from other federal contracting programs.[8] In addition, HUD had no authority to debar for labor standards violations. Causes for debarment from HUD contracts include conviction for criminal offenses incident to obtaining the contract, conviction under Federal Antitrust statutes, and violation of contract provisions. *See* 24 C.F.R. § 24.6 (1985). Nowhere is HUD authorized to enforce the Davis–Bacon Act[9] or Related Acts[10] labor violations.

The Department of Labor, on the other hand, has broad delegated authority to debar contractors and subcontractors from all federal contracts for labor standards violations. Pursuant to 40 U.S.C. § 276a, the Secretary of Labor has promulgated 29 C.F.R. § 5.12(a)(1) (1986) which states:

Whenever any contractor or subcontractor is found by the Secretary of Labor to be in aggravated or willful violation of the labor standards provisions ... such contractor or subcontractor ... shall be ineligible for a period not to exceed three years ... to receive any contracts or subcontracts subject to any of the statutes listed in § 5.1.

We find that because the scope of HUD's enforcement authority is limited to HUD programs, HUD, even though it acted as a representative of the United States, did not have "authority to represent [the United States'] interests in a final adjudication of the issue in controversy." *Sunshine Coal*, 310 U.S. at 403, 60 S.Ct. at 917. Reorganization Plan No. 14, while permitting HUD to enforce the labor standards with regard to its programs, in no way precluded the Secretary of Labor from government-wide enforcement of labor standards pursuant to 29 C.F.R. § 5.12(a)(1).

■ Moreover, we do not find that DOL's and HUD's causes of action are the same for res judicata effect, nor were the issues identical for collateral estoppel effect. The test for whether there is a single cause of action is: (1) whether the acts and the demand for relief are the same (2) whether the theory of recovery is the same, (3) whether the witnesses and documents necessary at trial are the same, and (4) whether the material facts alleged are the same. *United States v. Athalone Indus.*, 746 F.2d 977 (3d Cir.1984).

Here, the HUD debarment was based solely on the criminal conviction of Michael Facchiano, Jr. for mail fraud, which was a violation of HUD regulations. DOL, on the other hand, was concerned with Michael Facchiano, Sr., John Facchiano, as well as Michael Facchiano, Jr. and their alleged willful and aggravated violations of the labor standards requirements—albeit on a HUD-related project. Not only are the parties different, but the two violations do not constitute the same cause of action. Although the HUD violation involved the same underlying wrongful conduct, the two debarment proceedings arose from differ-

---

**8.** As noted above, Executive Order No. 12549 did not become effective until OMB had issued guidelines and the agencies had promulgated implementing regulations. HUD incorporated Executive Order No. 12549 by reference in May of 1988. Thus, the regulations applicable to the Facchianos were those in effect in 1985 and 1986.

**9.** 40 U.S.C. §§ 276a–276c (1988).

**10.** The Housing and Community Development Act of 1974, as amended, 42 U.S.C. §§ 1440(g), 5310 (1988); Contract Work Hours and Safety Standards Act, as amended, 40 U.S.C. §§ 327–333 (1988).

ent statutes and different evidence. What was material to the HUD proceeding was the criminal conviction and mitigating factors that would demonstrate the Company was now a "responsible" party that could again be entrusted with HUD contracts. The facts material to the DOL proceeding were actual evidence of the violations, the extent and nature of the misclassification and underpayments, evidence of previous violations and falsification of the certified payrolls. Finally, the demand for recovery in each of these proceedings was different. DOL demanded a three year, government-wide debarment for willful and aggravated violations of Davis–Bacon Related Acts. HUD demanded a debarment from HUD programs only, for a period up to three years.

Based on these considerations, we hold that res judicata and collateral estoppel do not bar DOL's debarment proceeding.

### C. *The Debarment of Individuals Under § 5.12(a)(1)*

■ Plaintiffs assert that the district court erred in concluding that 29 C.F.R. § 5.12(a)(1) authorized the debarment of Michael Facchiano, Sr., Michael Facchiano, Jr. and John Facchiano. They argue that 29 C.F.R. § 5.12(a)(1) only authorizes the debarment of the Facchiano Company, not its individual corporate officers.

29 C.F.R. § 5.12(a)(1) (1986) states:

Whenever any contractor or subcontractor is found by the Secretary of Labor to be in aggravated or willful violation of the labor standards provisions of any of the applicable statutes listed in § 5.1 other than the Davis–Bacon Act, such *contractor or subcontractor* or any firm, corporation, partnership, or association in

which such contractor or subcontractor has a substantial interest shall be ineligible for a period not to exceed 3 years ... to receive any contracts or subcontracts subject to any of the statutes listed in § 5.1.

(emphasis added). Plaintiffs argue that the plain language of this regulation provides only for debarment of the contractor or subcontractor, not the individual corporate officers. They assert that if DOL intended § 5.12(a)(1) to include individuals, it would have said so as it clearly did in § 5.12(a)(2).[11]

■ Although an agency is bound by the express terms of its regulations until it rescinds or changes them, *see United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), we find no error in DOL's interpretation that § 5.12(a)(1) includes debarment of individual responsible officers. Courts must accord substantial deference to an agency's "construction of a statutory scheme it is entrusted to administer." *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Moreover, an administrative agency's interpretation of its own regulation receives even greater deference than that accorded to its interpretation of a statute. *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

The Wage Appeals Board has consistently interpreted subsection 5.12(a)(1) to include "responsible officers" and routinely debars individual corporate officers in Related Acts cases. *See, e.g., R.J. Sanders, Inc. and Raymond J. Sanders, President*, WAB case No. 90–25 (January 31, 1991); *Janik Paving & Constr., Inc. v. Brock*, 828 F.2d 84 (2d Cir.1987). We find such inter-

---

**11.** Plaintiffs point out that § 5.12(a)(2), the regulation dealing with the Davis–Bacon Act cases, specifically includes debarment of individuals as well as the corporate entity. It provides:
In cases arising under contracts covered by the Davis–Bacon Act, the Administrator shall transmit to the Comptroller General the names of the contractors or subcontractors *and their responsible officers*, if any (and any firms in which the contractors or subcontractors are known to have an interest), who have been found to have disregarded their obli-

gations to employees, and the recommendations of the Secretary of Labor or authorized representative regarding debarment. The Comptroller General will distribute a list to all Federal agencies giving the names of such ineligible person or firms, who shall be ineligible to be awarded any contract or subcontract of the United States or the District of Columbia any contact or subcontract subject to the labor standards provisions of the statutes listed in § 5.1. (emphasis added).

pretation to be reasonable in furthering the remedial goals of the Davis–Bacon Act and Related Acts. Both § 5.12(a)(1) and § 5.12(a)(2) are designed to ensure the co-operation of the employer, largely through self-enforcement, in complying with the Davis–Bacon Act and Related Act requirements. Debarment may in fact "be the only realistic means of deterring contractors from engaging in willful [labor] violations based on a cold weighing of the costs and benefits of non-compliance." *Janik Paving & Constr., Inc.*, 828 F.2d at 91. In furthering the purpose of the Davis–Bacon Act and Related Acts, we can discern no rational reason for including debarment of responsible officers in one regulation, but not the other and thus defer to the Board's consistent interpretation that both regulations allow debarment of responsible officers.[12]

Plaintiffs emphasize the fact that § 5.12(a)(1) omits the words "responsible officers," while § 5.12(a)(2) specifically includes them. Nothing can be inferred from differences in language of the two regulations because they were not drafted at the same time. So long as the agency's interpretation of the regulation is reasonable, it is entitled to deference. *Udall*, 380 U.S. at 16, 85 S.Ct. at 801. "The ultimate criterion is the administrative interpretation [of an administrative regulation], which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* at 16–17, 85 S.Ct. at 801 (citing *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700). We therefore affirm the Board's determination that the individual corporate officers were subject to debarment under 29 C.F.R. § 5.12(a)(1).

D. *The Debarment of Michael Facchiano Sr.*

Michael Facchiano, Sr. argues that the district court erred in concluding that

he could be debarred for willful and aggravated violations of the Davis–Bacon Related Acts solely on the basis of his status as President of the Company. We agree and reverse as to the debarment of Michael Facchiano, Sr.

The Wage Appeals Board debarred Michael Facchiano, Sr. because "Board precedent did not allow a responsible company official to avoid debarment by claiming that the labor standards violations were committed by agents or employees of the firm." WAB Case No. 91–06 (Aug. 29, 1991).[13] We hold that such precedent is contrary to law in that it incorrectly imposes strict liability on corporate officers for labor standards violations. Unlike cases under the Federal Food and Drug Act, where Congress dispensed with a "consciousness of wrongdoing" or scienter element and therefore failure to act was deemed to be a sufficient basis for a responsible corporate agent's liability, *see United States v. Park*, 421 U.S. 658, 671, 95 S.Ct. 1903, 1911, 44 L.Ed.2d 489 (1974), labor standards statutes that include the term "willful" have been interpreted to require knowledge on the part of the corporate officer. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1987) (the word "willful" in the FLSA means conduct that is "voluntary," "deliberate" or "intentional" and not merely negligent); *See also Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 196 (5th Cir.1983) (the test for "willfulness" under the Portal-to-Portal Act of 1947, as amended, 29 U.S.C. § 255(a) is whether "there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA"). Indeed, we know of "no precedent for failing to give effect to a knowledge requirement that Congress has expressly included in a

---

**12.** A contrary interpretation of these regulations that would exclude responsible officers from debarment may in fact render the regulations ineffective if an offending corporate officer is allowed to create new businesses or continue to bid through other preexisting businesses in order to avoid debarment.

**13.** The Board cited *Marc S. Harris, Inc.*, WAB Case No. 88–40 (Mar. 28, 1991) at p. 4 and the cases cited therein as the precedent it was bound to follow.

criminal statute." *United States v. Mac-Donald & Watson Waste Oil Co.*, 933 F.2d 35, 52 (1st Cir.1991). DOL's regulation 29 C.F.R. § 5.12(a)(1) specifically requires the labor standard violation to be "willful or aggravated" and thus Michael Facchiano, Sr. cannot be held liable absent substantial evidence that he knew of the violations.

■ Although there is some evidence in the record that Michael Facchiano, Sr. did know about the labor standards violations, the Wage Appeals Board never made such a finding. On appeal, DOL points to evidence that Michael Facchiano, Sr. was present and assumed an active role in the day to day operation of the business in order to prove that he knew of the labor standards violations. However, "the courts may not accept appellate counsel's *post-hoc* rationalizations for agency action." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983). It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself. *Id.* (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947); *American Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 539, 101 S.Ct. 2478, 2505, 69 L.Ed.2d 185 (1981)).

We find that the Wage Appeals Board's articulated basis for debarring Michael Facchiano, Sr. is contrary to law. Because a reviewing court cannot affirm an agency decision based on improper grounds, *see SEC v. Chenery Corp.*, 332 U.S. at 196–97, 67 S.Ct. at 1577, the district court's approval of the Board's debarment cannot stand.

Accordingly, the judgment of the district court affirming the debarment of Michael Facchiano, Sr. is vacated, and we remand to the district court with directions that the case be remanded to the Wage Appeals Board for a determination as to whether Michael Facchiano, Sr. had the requisite knowledge for a "willful or aggravated" violation. In all other respects, the judgment of the district court is affirmed.