Stephanie GOETZ and Kevin McGill, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

SYNTHESYS TECHNOLOGIES, INC., et al.; Defendants.

No. A–02–CA–081–H.

United States District Court, W.D. Texas, Austin Division.

Sept. 25, 2003.

J. Derek Braziel, Brady Edwards, David George, Edwards & George LLP, Dallas, TX, for Plaintiffs.

Daphne Y. Taylor, Paralegal, Edwards & George LLP, Dallas, TX, for Defendants.

### ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HUDSPETH, Senior District Judge.

On this day came on to be considered Defendant Walter Loewenbaum's ("Loewenbaum") motion for summary judgment. Plaintiffs Stephanie Goetz and Kevin McGill brought this action against Defendants Synthesys Technologies, Inc. ("Synthesys"), STI Healthcare, Inc. ("STI"), Michael Fleischhauer ("Fleischhauer"), Harry Gittes, Loewenbaum, Marvin Gresham, and James Kever alleging violations of the Fair Labor Standards Act (FLSA), as well as pendent claims under Texas law. Between April 19, 2002 and June 22, 2003, twelve other similarly situated former employees of Synthesys joined the suit pursuant to the opt-in provision of the FLSA, 29 U.S.C. § 216(b). In an individual capacity, Plaintiff Goetz brought claims against Loewenbaum, Patti O'Meara, and Personal Administrators for retaliation under the FLSA, conspiracy to retaliate, tortious interference with contractual relations, conspiracy to tortiously interfere with contractual relations, and civil conspiracy. Additionally, Plaintiffs Goetz and McGill sued Loewenbaum and STI under the Texas Fraudulent Transfer Act (TUFTA). This claim was later dropped. Defendant Loewenbaum asks for summary judgment on all the claims brought against him.

### I. FACTS

Because this is a motion for summary judgment brought by Defendant Loewenbaum, the Court will view the facts in the light most favorable to the Plaintiffs. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For the purpose of efficiency, only the facts relevant

to the claims pending against Defendant Loewenbaum will be discussed.

All Plaintiffs were employees of Defendant Synthesys, where Loewenbaum served on the board of directors. In addition to serving on the board, Loewenbaum ranked among Synthesys's five largest shareholders. In total, he invested more than $3,000,000 in the company.[1]

In May, 2001, the Synthesys board of directors met to discuss the financial condition of the company. At this meeting, layoffs were ordered and several board members, including Loewenbaum, extended a bridge loan to the company totaling approximately $800,000. The lenders indicated that they would make no further loans to the company.

On or about December 14, 2001, Defendant Fleischhauer, the company's president, informed the Board that Synthesys would not be able to make payroll on January 15, 2002.[2] Plaintiffs' regularly scheduled paydays were the first and fifteenth of every month. The Board conducted a conference call on that day, December 14, 2001, to discuss the company's financial position.[3] On January 15, 2002, all Plaintiffs, excepting Plaintiff Goetz, did not receive their wages. Goetz was paid in a timely fashion; however, her payment was conditioned upon a pledge to continue working without pay. As a result, Goetz was not paid her wages on the next payday, February 1, 2002.

Following Synthesys's demise, Goetz filed suit against Synthesys and the Board, including Loewenbaum individually, on February 6, 2002. As it became apparent Synthesys would soon fold, Goetz applied for a position with Defendant Personal Administrators, a company that provides financial services for Defendant Loewenbaum. At no time during the interview process was Goetz asked about any potential conflicts she might have with Personal Administrators' clients nor is it the company's practice to do so. Personal Administrators did, however, attempt to contact Loewenbaum to confirm Goetz's references. It was not until after Goetz was hired and Loewenbaum was served with Goetz's suit regarding the Synsthesys matter, that Loewenbaum responded to Personal Administrators' inquiry. Loewenbaum contacted Personal Administrators' president, Defendant O'Meara, to express his concern over Goetz's possible access to his personal files, which included a number of financial statements. Following that conversation, O'Meara took precautionary measures to secure Loewenbaum's files and discussed Loewenbaum's discomfort with Goetz in a series of meetings. Shortly thereafter, Goetz received a letter of termination from Personal Administrators.

## II. LEGAL ANALYSIS

Defendant Loewenbaum advances five arguments for summary judgment. First, Loewenbaum argues that he does not fall within the definition of "employer" found in 29 U.S.C. § 203(d) and, therefore, cannot be held liable under the FLSA or Texas Payday Act. Second, Loewenbaum challenges Plaintiffs' breach of contract claim, arguing that Plaintiffs have not shown any evidence that any Plaintiff had a contract with Loewenbaum or that any reason exists to set aside the general rule that directors are not held liable for corporate contracts. Third, Loewenbaum contends that he cannot be held liable on the grounds of fraud and theft because of the

1. *Deposition of Walter Loewenbaum*, p. 14 [hereinafter "Loewenbaum Depo."].

2. *Deposition of Michael Fleischhauer*, p. 137–38 [hereinafter "Fleishchhauer Depo."].

3. *Id.*

inapplicability of vicarious liability in this context. Fourth, Loewenbaum asserts that his actions in response to Goetz's hiring were not retaliatory in nature and that, in turn, there was no conspiracy to retaliate or tortiously interfere with Goetz's contractual relations. Finally, Loewenbaum maintains that Goetz's claim for tortious interference with contractual relations is subject to an affirmative defense of justification.

Under FED. R. CIV. P. 56(c), the Court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." When the moving party demonstrates from the record that the nonmoving party's claims lack sufficient evidence, the nonmoving party must go beyond the pleadings and present specific facts showing that there is a genuine issue for trial. See *id.*

### A. FLSA "Employer" Status

■ Defendant Loewenbaum first contends that Goetz's claims under the FLSA or Texas Payday Act are appropriate for summary judgment because Loewenbaum does not fall within the definition of "employer" spelled out in 29 U.S.C. § 203(d). The Court believes there is a genuine issue of material fact on this subject.

■ An employer is defined under § 203(d) of the FLSA as including "any person acting directly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Whether a party is an employer is essentially a question of fact. *See Donovan v. Sabine Irrigation Co., Inc.,* 695 F.2d 190, 194 (5th Cir.1983). The employer status determination is not circumscribed by formalistic labels or common-law notions of employment. *Id.* (cit-

ing *Bartels v. Birmingham,* 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947)). Instead, it is made by examining the totality of the circumstances. *Id.* (citing *Real v. Driscoll Strawberry Associates, Inc.,* 603 F.2d 748 (1979)). "In doing so, [the Court must] adhere to the firmly-established guidon that the FLSA must be liberally construed to effectuate Congress' remedial intent." *Id.* (citing *Donovan v. I–20 Motels, Inc.,* 664 F.2d 957 (5th Cir.1981)).

Essentially, Defendant Loewenbaum contends that he lacked the requisite control and authority to be held personally liable here. However, his reading of these two concepts is too narrow and rigid. The FLSA's concept of "employer" is a much more expansive and amorphous creature than Defendant Loewenbaum would like to admit. "Addressing the 'economic realities' of individual cases, courts have found liable individuals occupying a various range of corporate positions and exercising various degrees of control." *Dole v. Simpson,* 784 F.Supp. 538, 545 (S.D.Ind. 1991). Moreover, the Fifth Circuit has held that "employer" status need not be based on actual acts of the officer or director; the mere "power to act, on behalf of the corporation vis-a-vis employees" suffices. *Donovan v. Sabine Irrigation Co., Inc.,* 695 F.2d at 194–95.

As indicated above, control sufficient to qualify one as an "employer" can take many forms. Here, the fact that Loewenbaum claims he had nothing to do with the day-to-day operations of Synthesys is relevant, but such control is not required. "Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do [ ] not diminish the significance of its existence.'" *Herman v. RSR Security Serv. Ltd.,* 172 F.3d 132, 139 (2d Cir.1999) (quoting *Donovan v. Janitorial*

*Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982)). Regardless, Plaintiffs have put forth evidence that Loewenbaum did participate in at least some facets of Synthesys's day-to-day operations. For example, the deposition testimony of Defendant James Kever suggests some involvement of this sort on the part of Loewenbaum. Plaintiff Jon Percy indicated in his own deposition that Loewenbaum participated in the negotiation of a contract between Synthesys and a business partner, Luther–Middlefort.[4] Additionally, Plaintiffs have produced a number of emails that show participation on the part of Loewenbaum in the running of Synthesys. In short, enough evidence has been adduced by Plaintiffs to allow a reasonable jury to conclude Loewenbaum did participate in some aspects of Synthesys's daily operations.

Similarly, Loewenbaum's assertions that, "Plaintiffs have no evidence of Loewenbaum setting work hours, determining employee salaries, supervising employees, assigning job tasks, signing paychecks, ... hiring and firing employees ... [or] negotiat[ing] any aspect of their employment [terms]" are not dispositive, as Loewenbaum suggests, even if true. Def. Loewenbaum's Mot. for Summ. J., p. 6. Furthermore, there is evidence that suggests Loewenbaum did in fact exercise this type of control. Plaintiff Percy's deposition testimony indicates Loewenbaum did play a role in personnel decisions, stating that Loewenbaum was "very involved" in the mid–2001 layoffs at Synthesys.[5] Also, there is evidence that he attended and participated in an employee training seminar on at least one occasion.[6] Once more, a fact issue exists on the matter.

It is in the realm of financial control that the evidence most convincingly supports an "employer" status finding. Numerous courts have considered financial control over a corporation to be a significant factor in making the "employer" status determination. *See, e.g., Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d at 194; *Dole v. Simpson*, 784 F.Supp. at 545; *Donovan v. Grim Hotel*, 747 F.2d 966, 972 (5th Cir. 1984) (imposing liability on a majority shareholder who controlled the company's finances and guided corporate policies); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir.1991) (focusing on the majority owner's control of the company's "purse strings" as justification for finding "employer" status). Here, Defendant Loewenbaum ranked among Synthesys's five largest shareholders. By his own admission, he had over $3,000,000 invested in the company. His contribution to the bridge loan in May, 2001 was crucial to Synthesys's ability to continue operations. In short, he clearly possessed a significant amount of financial control at Synthesys.

When significant financial control has been coupled with a decision to keep a failing business in operation, as Plaintiffs allege in this case, courts are even more inclined to find "employer" status. *See, e.g., Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir.1983), *Dole v. Simpson*, 784 F.Supp. at 545–46. Indeed, the Simpson court went as far as to say that substantial financial control "becomes almost conclusive [in the "employer" analysis] when it involves the decision to keep a failing business in operation." 784 F.Supp. at 545–46. "An individual may become personally liable if he or she decides to keep employees working despite of [sic] the corporation's inability to meet its statutory duty to pay

---

4. *Deposition of Jon Percy,* p. 48 hereinafter ["Percy Depo."].

5. *Percy Depo.,* p. 48.

6. *Percy Depo.,* p. 46.

the employees." *Id.* (citing *Donovan v. Agnew,* 712 F.2d at 1511).

Here, Plaintiffs have shown a genuine issue of material fact on the issue of whether Defendant Loewenbaum played a role in keeping the company open past its ability to meet its payroll. Indeed, Defendant Loewenbaum himself appears to be ambivalent on the issue. In his deposition, Loewenbaum concedes that he "may have" known Synthesys was out of money in December, 2002.[7] According to Defendant Fleischhauer, the company's president, Loewenbaum, as well as his fellow members of the Board, had monthly financial statements showing the company's dire financial straits prior to a conference call on December 14, 2002. It is his contention that the Board had the opportunity to tell Fleischhauer to discontinue operations at this time, that the information available to them dictated that they do so, and that, despite this, the Board failed to act.[8] Defendant Loewenbaum, for his part, rebuts this allegation. But as the Plaintiffs succinctly put it in their brief, there exists a genuine issue of material fact on the matter of what Loewenbaum knew and when he knew it. When evidence of contradictory facts has been submitted, as is the case here, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)). Accordingly, this matter should be resolved at trial, not via summary judgment.

**B. Plaintiffs' Breach of Contract Claim**

■ "[FRCP] Rule 56(e) requires the nonmoving party to go beyond the plead-

ings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Plaintiffs fail to go beyond the pleadings on the breach of contract claim. Indeed, Plaintiffs do not even mention the claim in their Response to Defendant Loewenbaum's Motion for Summary Judgment. Under Texas law, corporate directors are generally not liable for corporate contractual obligations. *See Bell Oil & Gas Co. v. Allied Chemical Corp.,* 431 S.W.2d 336, 339 (Tex.1968). Here, Plaintiffs have failed to adduce any evidence that shows contractual relations ever existed between the Plaintiffs and Loewenbaum or that indicates the general rule against holding corporate directors liable for corporation contracts should not apply here. Consequently, this matter is appropriate for summary judgment, and Plaintiffs' breach of contract claim is dismissed.

**C. Plaintiffs' Claims for Fraud and Theft**

Third, Loewenbaum argues that summary judgment should be granted on Plaintiffs' claims of fraud and theft. Plaintiffs' Fourth Amended Complaint makes it clear that these claims have not been brought against Loewenbaum, and the matter is therefore moot.

**D. Plaintiff Goetz's Retaliation Claim**

Next, Defendant Loewenbaum claims that his actions involving Goetz's termination from Personal Administrators were not retaliatory and that, as a result, he is not subject to liability under 29 U.S.C. § 215(a)(3). First, he argues, again, that

---

**7.** *Loewenbaum Depo.,* p. 67.

**8.** *Fleischhauer Depo,* p. 138.

his failure to fall within the FLSA's definition of "employer" absolves him of any liability. Liability under § 215(a)(3), like all FLSA provisions, only extends to "employers." As discussed above, a genuine issue of material fact exists as to whether Loewenbaum qualifies as an "employer," and, as a result, the issue is inappropriate for resolution on summary judgment. The fact that Loewennbaum was, by the time of the alleged events giving rise to this claim, a former employer is of no consequence. The retaliation provision of the FLSA has been held to apply to both current and former employers. *See, e.g.,* *Dunlop v. Carriage Carpet Co.,* 548 F.2d 139 (6th Cir.1977).

▮ Alternately, Defendant Loewenbaum contends that his actions were not retaliatory in nature. To establish a prima facie case of retaliation for the exercise of a federally protected right, a plaintiff must show that (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action following her protected activity; and (3) there was a causal connection between the activity and the adverse action. *James v. MedicalControl, Inc.,* 29 F.Supp.2d 749, 752 (N.D.Tex. 1998) (citing *Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 554 (5th Cir.1997)). In essence, Loewenbaum is attacking the third of these three requirements; he argues that there is no genuine issue of material fact as to whether there was a causal connection between the filing of Goetz's FLSA claim against Loewenbaum and her termination from Personal Administrators. The Court disagrees.

Much of the debate centers around the content of conversations between Loewenbaum and O'Meara and the resulting conversations between O'Meara and Goetz. Loewenbaum and O'Meara maintain that Loewenbaum did not order, imply, or suggest to anyone at Personal Administrators that Goetz be fired. Conversely, Plaintiff Goetz contends that O'Meara directly told her that Loewenbaum had requested that Goetz either no longer work there or drop her suit against him.[9] Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Here, conflicting deposition testimony exists showing a genuine issue of material fact—whether Loewenbaum ordered Goetz's firing. It would therefore be inappropriate to resolve this dispute at the summary judgment phase.

**E. Conspiracy to Retaliate and Tortiously Interefere With Contractual Relations**

▮ In Texas, a conspiracy consists of the following elements: (1) two or more persons, (2) acting to accomplish an objective, (3) following a meeting of the minds, (4) commission of unlawful acts and (5) damages suffered by the plaintiff. *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 675 (Tex.1998). In the instant case, there is conflicting deposition testimony on the subject of whether a "meeting of the minds" occurred between Loewenbaum and O'Meara regarding the decision to terminate Goetz. Again, the question of what was said between Loewenbaum and O'Meara is crucial. In light of Goetz's deposition testimony and the circumstances surrounding her dismissal from Personal Administrators, a reasonable jury could conclude that a meeting of the minds between Loewenbaum and O'Meara did occur.

---

**9.** *Deposition of Stephanie Goetz,* p. 87.

Defendant Loewenbaum also argues, almost in passing, that Goetz's termination by Personal Administrators did not constitute an unlawful act and therefore, no conspiracy could have taken place. This represents a specious argument. Yes, Goetz was an at-will employee of Personal Administrators and, as such, she could have been lawfully terminated. But when the termination is retaliatory in nature, as Plaintiff Goetz alleges and supports in her brief, that termination becomes unlawful. Thus, if the jury decides that a retaliatory action occurred, they could also logically conclude a conspiracy existed.

■ With regard to the conspiracy to tortiously interfere claim, Loewenbaum asserts the affirmative defense of justification. Plaintiff Goetz's objection to the raising of the unpled affirmative defense is noted, but insufficient to deny it consideration. "[A]n affirmative defense under [FRCP] 8(c) is not waived when a defendant who failed to assert it in a responsive pleading 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced.'" *Chambers v. Johnson,* 197 F.3d 732, 735 (5th Cir.1999) (quoting *Lucas v. United States,* 807 F.2d 414, 418 (5th Cir.1986) (alterations in original)). That said, Loewenbaum's justification defense does not establish a basis for summary judgment.

■ A defense of justification can be "based on either the exercise of (1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." *Tex. Beef Cattle Co. v. Green,* 921 S.W.2d 203, 211 (Tex.1996). Loewenbaum argues that he had a legal right to contact O'Meara and express his concerns regarding the confidentiality of his files. If that is indeed all that the conversation(s) consisted of, he is correct. But if, as Plaintiff Goetz states in her testimony, Loewenbaum demanded that O'Meara

force Goetz to either give up her suit or be terminated, he was clearly acting outside of his legal rights. Loewenbaum is accurate when he cites *Calvillo v. Gonzalez* for the proposition that the defendant's motivation behind the exercise of his legal right is not relevant. 922 S.W.2d 928, 929 (Tex. 1996). However, at issue here is not Loewenbaum's motivation for calling O'Meara, but the content of their conversation. In sum, this is yet another genuine issue of material fact for the jury to decide.

**F. Texas Uniform Fraudulent Transfer Act Claims**

Defendant Loewenbaum also requests summary judgment on the claims brought against him under the Texas Uniform Fraudulent Transfer Act (TUFTA). These claims were not included in the Plaintiffs' Fourth Amended Complaint, and his request is therefore moot.

## III. CONCLUSION

It is ORDERED that Defendant Loewenbaum's motion for summary judgment with relation to the FLSA and Texas Payday Act claims be, and it is hereby, DENIED.

It is further ORDERED that Defendant Loewenbaum's motion for summary judgment with relation to the breach of contract claims be, and it is hereby, GRANTED.

It is further ORDERED that Defendant Loewenbaum's motion for summary judgment with relation to the fraud, theft, and TUFTA claims be, and it is hereby, DENIED as moot.

It is further ORDERED that Defendant Loewenbaum's motion for summary judgment with relation to the claims for retaliatory firing, conspiracy to retaliate, conspiracy to tortiously interfere with contractual

relations, and tortious interference with contractual relations be, and it is hereby, DENIED.